## Reynolds' Admr. v. C., N. O. & T. P. Ry. Co. and F. W. Pearce.

(Decided May 9, 1912.)

### Appeal from Lincoln Circuit Court.

1. Railroads—Evidence—Peremptory Instruction.—In an action against a railroad company for the death of a person, the evidence showing that the engineer saw the deceased from a point 1,880 feet distant, sitting on the track; he had a right to presume that the person would get off the track before the train reached him, and there was no obligation to check the train until from the circumstances a person of ordinary prudence would conclude that the person sitting on the track was heedless or unconscious of the approaching train.  Appellant's motion for a peremptory instruction should have been sustained.

2. Railroads—What Ordinary Prudence Would Not Require.—Ordinary prudence would not require one to believe from a greater distance that a man sitting on the end of the ties would not get out of the way, or was unconscious of the train's approach. There was no obligation to discover deceased's presence on the track, but only the duty to avoid injuring him if it within reason could be done after his peril was discovered.

EMMET PURYEAR, GEORGE DAVIDSON, ROBERT HARDING and GREENE & VANWINKLE for appellant.

J. W. ALCORN, K. S. ALCORN and JOHN GALVIN for appellees.

OPINION OF THE COURT BY JUDGE WINN—Affirming.

This is the second appeal in this case.  The opinion upon the former appeal is to be found in 102 S. W., 888. The facts upon the first trial are stated there.  Upon them this court held that a peremptory instruction should have been given in favor of the railway company.

The facts appearing in the testimony upon the second trial differed no little from those detailed in the opinion upon the former appeal. Upon the second trial it was made to appear that Reynolds upon the day of the accident, was in charge of a dead engine located in about the middle of a double-header south-bound freight train; that when this train reached a water tank in Pulaski County, while the two engines pulling the train were taking water there, Reynolds climbed down from his engine and went forward to talk with those in charge of the pulling engines; that when the train started he endeavored to climb upon it; that he fell in the effort; that his train passed on, leaving him; that he followed it down the track a little way and sat down upon the end of a tie on the west side of the track, resting on the west rail of the track. A short time later a north-bound freight train struck him while in this position and killed him. In the opinion, supra, it was remarked that his position upon the railroad track was unexplained by the evidence, and that he might have been insane or intoxicated; while plaintiff's proof upon the present trial developed that he was struck or injured in his effort to board his train as it was leaving him. This was apparent from the testimony of eye-witnesses and from the fact that a wound was found upon the top of his head with dried blood upon it immediately after the train which killed him had struck him; and further from the fact that his watch chain was broken and his watch lost when he endeavored to get upon his own train, the watch not being found until after his death, when one of those adjacent, upon seeing the broken chain, went to look for it. It seems clear from the testimony upon the second trial, therefore, that in an endeavor to get upon his train he was injured so that he sat down upon the side of the track, either sickened or unconscious. This is material, however, only to his character and memory, because in the former case it was held that since he was then in no discharge of any duty to the employer, he was in no other position than that of a trespasser; and he must be so considered here. The former opinion remarked that it made no difference whether he knew what he was doing when he came into and placed himself in this perilous position; which as well must be the law of this case.

In addition to the above noted differences in the

testimony upon the two trials, it is to be remarked that the man Singleton, whose testimony for the plaintiff on the first trial was made a turning point in the opinion, was not introduced by him upon the second.    A witness, one Andy Patterson, who did testify upon the first trial, testified much more explicitly and very differently upon the second trial.    Upon the second trial he testified that the train which struck and killed the decedent began giving its danger signals at a point at a distance (ascertained by measurement    after the first trial) of 1,-881 feet from the point where Reynolds was killed. This man was living adjacent to the track and testified that when he heard the danger signal he took particular note of it because he thought it might be a warning for some of his stock upon the track, and as he had had stock killed before he was anxious about it.    Upon the first trial he had given a much shorter distance as the distance from the fatal point to that at which the alarm signals had first been sounded from the engine; but in cross examination upon this variation at the    second trial he explained that his evidence upon the first trial had been the result of approximation, while that upon the second trial was the result of measurement.    Upon the second trial also, one Cicero Reynolds, a kinsman of the decedent, testified that he was a civil engineer, that before the second trial he had gone with Patterson to the place where the accident occurred, and that when Patterson had pointed out to him the place where the train was when the alarm signals were first given and the place where B. Reynolds was when he was killed, he, the witness, had measured the distance with a steel tape, and that it was 1,880 feet. All the witnesses make it clear that at the point of the accident the track was perfectly straight for a long distance, and that nothing in the way of hills, curves and the like interfered with vision along the track for the distance of a mile.

On the character and speed of the train which struck and killed Reynolds it appears from the testimony introduced by plaintiff that it was composed of two engines, some thirty-six or thirty-seven cars, that it was running at twenty-five to thirty miles an hour, and that at the time and place this train could have been stopped in 200 to 250 yards.

With this testimony in the record; i. e., that the danger signals were given at 1,880 feet from the man's position practically in continuity until the train struck

him; that the track was straight and the possibility of sight not obscured by any intervening curve; that it was in the early part of a sunshiny February afternoon, and that this train could have been stopped in from 200 to 250 yards or 600 to 750 feet, a motion was made for a peremptory instruction.  The court did not pass upon the motion for a peremptory instruction at this point, but reserved action until the conclusion of the testimony.

The motion should have been sustained.   We will concede for argument the plaintiff's position that the testimony, or the excluded, and as he contends, admissible testimony, was sufficient to establish that at the farthest point contended for by him, the point 1,880 feet distant, Reynolds was seen and known to be a man in a position of danger, and we likewise will further concede that the train could have been stopped in 600 feet, the shortest distance claimed by plaintiff.  In other words, the case will be considered upon the theoretical facts that for 600 yards the engineer knew the object was a human being, and that though he could have stopped his train in 200 yards, he did not stop it.   Under this condition there was no obligation on the engineer or the railway company to at once stop the train.   When the engineer saw Reynolds sitting on the side of the track, he had a right to presume that he would get off before the train reached him, and there was no obligation to check the train until from the circumstances a person of ordinary prudence would conclude that Reynolds was heedless or unconscious of the approaching train.   The mere intervention of a distance of 200 yards, without movement by him, no other fact appearing than Reynolds' presence upon the track, was not sufficient to apprise a person of ordinary prudence that Reynolds would not get out of the way of the approaching train.   L. & N. Railroad Co. vs. Hunt's Admr., 142 Ky., 778; Murray vs. Southern Railway Co., 140 Ky., 453.  The plaintiff's evidence, therefore, taken in its details most favorable to him, did not make out a case to go to the jury.

The defendants did not stand upon their right to a peremptory instruction upon the conclusion of plaintiff's evidence, but introduced testimony tending to establish the absence of knowledge that Reynolds' body

was the body of a man, and that all due care was exercised after the discovery of this fact. But this proof was unnecessary, because they had the right, under the facts proven to admit that the object was human and yet to presume that he would get off the track, and to make no effort to check the train until, by the exercise of an ordinarily prudent judgment it was apparent that he was heedless or unconscious of the train's approach. Under all the evidence, every effort was being made to stop the train at least as far as 500 feet before it struck Reynolds. Ordinary prudence would not require one to believe from a greater distance that a man sitting on the end of the ties would not get out of the way, or was unconscious of the train's approach. The witness Patterson, only 250 feet away, who had seen Reynolds the entire time he was sitting there, made no effort to notify him of the train's approach, doubtless in the unconsciously assured belief that he would move out of the train's way.

Upon the second trial the engineer testified that as a matter of fact he first saw the object when he was 600 feet south of it; that at 500 feet he discerned it was a man and immediately set his appliances to stop the train. Quinlan, the brakeman who was sitting on the fireman's seat in the engine cab, testified that they first saw the object at about 900 feet; that at about 600 feet Pearce, the engineer, said he believed the object was a man and immediately applied the brakes. The train was 1,364 feet long, of loaded freight cars, drawn by two locomotives, and at the time was running down a 1 per cent grade at twenty-five to thirty miles per hour. All defendants' witnesses are pretty well agreed that the train could not have been stopped in a distance shorter than from 1,400 to 2,000 feet. True, two witnesses for plaintiff gave it as their judgment that the train could have been stopped in from 600 to 750 feet; but this seems to us a remote possibility under the evidence. As was said in the case of L. H. & St. L. Ry. Co. vs. Jolly's Admx., 90 S. W., 977, cited in the former appeal in this case: "The law does not look to bare possibilities. It requires no more of the human machine than may be reasonably expected of it under the circumstances. When all the evidence as to what was done by those who witnessed the transaction is to the effect that

the engineer did everything in his power, and there is no evidence that there was anything omitted which he should have done, the bare opinion of experts that the train might have been stopped sooner than it was stopped cannot be said to contradict the witnesses as to the physical facts.'' Bearing in mind that there was no obligation to discover Reynolds' presence upon the track, but only the duty to avoid injuring him if it within reason could be done after his peril was discovered, the record does not present such a state of fact as warranted the submission of the case to the jury upon the absence of such care.

The judgment is affirmed.