## Caesar's Administrator v. Louisville & Nashville Railroad Company.

(Decided October 8, 1913).

### Appeal from Henderson Circuit Court.

1. Railroads—Trespasser Upon Track—Duty to Avoid Injury.—In running its trains through the open country and away from a public crossing, and not where persons are to be reasonably expected upon the track, a railroad company owes a trespasser upon its track only the duty to avoid injuring him after the discovery of his peril.

2. Railroads—Trespasser Upon Track—Duty of Engineer to Exercise Ordinary Care to Avoid Injury.—Whenever it becomes reasonably apparent to the engineer of a train, by the exercise of ordinary prudence, that a trespasser upon the track in the country is unconscious of the approach of the train, the engineer should exercise ordinary care, with the means at his command, to stop the train in time to avoid injuring the trespasser.

3. Railroads—Death of Trespasser—Question of Engineer's Negligence—Submission to Jury.—Where the engineer of a train testified that he could stop his train in a little more than a quarter of a mile by applying the brakes; that he applied the brakes when the train was 300 feet from the trespasser; and it otherwise appeared that the train ran nearly half a mile after the engineer had applied the brakes, the case should have been submitted to the jury upon the question of the engineer's negligence in causing the death of the trespasser, and the order of the circuit court peremptorily directing a verdict for the defendant, was error.

Morris & Hart for appellant.

FRED P. CALDWELL, YEAMAN & YEAMAN, CHARLES H. MOORMAN and BENJAMIN D. WARFIELD for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

About noon on June 18, 1912, John Caesar was killed by appellant's train at a point about three miles south of Henderson. Caesar was going southwardly from Henderson to Robards, a town about twelve miles below Henderson, and had been walking upon appellee's railroad track. When he reached the point indicated, he sat down on the end of a cross-tie, leaning forward, or to one side, with his head slightly turned toward the south. The place where he was sitting at the time he was killed was on a straight stretch of track of more than a mile in length, and was one-half mile north of a curve in the track known as Rankin, or Shuttee's Crossing. While

he was sitting in this position, appellee's northbound passenger train, pulled by two engines, and running at a speed of 45 or 50 miles an hour, struck and killed Caesar almost instantly. In answering this suit by his administrator for damages, the appellee denied negligence in the operation of its train, and interposed a plea of contributory negligence upon the part of Caesar in bar of a recovery. At the conclusion of plaintiff's testimony the court, on motion of defendant, instructed the jury peremptorily to find for the defendant; and from a judgment in accordance with the instruction the plaintiff prosecutes this appeal.

The only question, therefore, before us is, was there sufficient evidence to carry the case to the jury?

The evidence shows that a slow rain was falling, and the distance from Shuttee's Crossing at the curve in the track, to the place where Caesar was sitting on the track, was a few feet less than one-half mile; and from the time the train turned the curve at Shuttee's Crossing the engineer had more than a mile of straight track in front of him. Upon this point Satterfield, the engineer, testified as follows:

"Q. When you came around the curve so that you could see that straight track what did you see on the track, if anything?

"A. I saw an object but I didn't know what it was. It was too far off.

"Q. Were you looking ahead? A. Yes, sir.

"Q. At what rate of speed were you running? A. We were running 45 or 50 miles an hour.

"Q. Did you discover that object as soon as you got around the turn so you could see the straight track ahead of you? A. Yes, sir.

"Q. Where was that object? A. It was sitting, looked like in a sitting position, stooping, on the east side of the track, on the end of the ties.

"Q. On the end of the ties or the rail? A. Seemed to be on the end right close to the rail.

"Q. Sitting or stooping? A. Stooping over.

"Q. How far away were you when you rounded the bend where you first could discover that it was an object? A. I was about a half mile I suppose.

"Q. Did you keep your eye on the object? A. Yes, sir.

"Q. Did you whistle as soon as you saw it? A. I whistled as soon as I discovered it was a person.

CROSS-EXAMINATION.

"Q. What did you do except to whistle as soon as you discovered that it was a person? A. I applied the brakes in emergency.

"Q. For what purpose did you whistle when you discovered that it was a person? A. To warn them that they might get out of the way.

"Q. For what purpose did you apply the brakes? A. That I might stop the train as quick as possible."

Satterfield further says that although he had seen the object as soon as he turned the curve in the road a half-mile away, he did not sound the whistle, or apply the brakes, until he was about one hundred yards from Caesar, and that he could have stopped his train after applying the emergency brakes in a distance a little longer than one-quarter of a mile.

Ernest Slaughter, who lives near where Caesar was killed, saw Caesar walking on the railroad track, southwardly, just a few minutes before his death. He heard the train whistle for Shuttee's Crossing, and says it did not whistle again until it gave the signal to back up after it had struck Caesar. Slaughter further testifies that by actual measurement the train ran 2,160 feet after it struck Caesar, and before it stopped; and, as Satterfield says he was a hundred yards, or 300 feet, south of Caesar when he sounded the whistle and applied the brakes, it will readily be seen that the train ran 2,460 feet after he had applied the brakes, although, according to Satterfield's own testimony, the train could have been stopped in about 1,500 feet, or a little more than a quarter of a mile.

Holbert Slaughter, a brother of Ernest Slaughter, was near his brother at the time of the accident, and testifies that he did not hear the engine whistle from the time it passed Shuttee's Crossing until it stopped and backed up.

By actual measurement it was subsequently determined that the distance from Shuttee's Crossing to the point where Caesar was on the track was only a few feet less than a half mile, thus corroborating Satterfield's testimony as to the distance his train was from Caesar when Satterfield first saw him.

Appellee argues that neither the speed nor the weight of the train can be complained of as negligence, since the accident occurred in the country and not at a crossing; and this must be conceded.

Appellee further contends that the engineer in charge of the train was not bound to begin checking his train when he discovered the object on the track, and that Caesar being a trespasser, the appellee owed him no duty except to use ordinary care to avoid injuring him after his peril was discovered. This must also be conceded.

It was, however, the duty of the engineer to sound the alarm whistle and apply the brakes as soon as it became reasonably apparent that Caesar was unconscious of the approach of the train. This question was considered at length, and with care, in the late case of Thompson's Admr. v. I. C. R. R. Co., 154 Ky., 820. Thompson was killed while sitting, with two other boys, upon the ties of the defendant's track, in the country. In that case the court found, as a matter of fact, that the train was stopped as soon as it could have been stopped after the engineer became aware that the boys were unconscious of the approach of the train and would not heed his signal; and, for that reason, we affirmed the circuit court's ruling in giving a peremptory instruction to find for the defendant. But, in the course of the opinion, the court laid down the rule applicable to such cases, as follows:

"The train was moving very rapidly. The boys were only about 158 yards distant. The act of ringing the bell and blowing the whistle necessarily consumed some time. Furthermore, the law did not require the engineer to apply his brakes until he had given the alarm, and it was then reasonably apparent to a person of ordinary prudence, situated as he was, that the boys were unconscious of the approach of the train. As a matter of fact, the train did stop with the baggage car near the boys. Giving full effect to the evidence for plaintiff, though it bears the earmarks of speculation rather than of sound judgment, it merely tends to prove that the train could have been stopped between the point at which the engineer saw the boys, and the point at which the accident occurred. It does not show that after the lapse of time necessarily consumed in giving the alarm signal, and after it became reasonably apparent to a person of ordinary prudence, situated as the engineer was, that the boys were unconscious of the approach of the train, he could, in the exercise of ordinary care, with the means at his command, have stopped the train in time to avoid

injuring the intestate. Reynold's Admr. v. C., N. O. & T. P. Ry. Co., 148 Ky., 252; Creager's Admr. v. I. C. R. R. Co., 134 Ky., 543."

Applying that rule to the facts in the case before us, we find that in addition to the testimony tending to show that the engineer failed to sound the whistle at all before the train struck Caesar, it is unquestionably shown that the train went nearly one-half mile after the engineer says he applied the brakes and sounded the alarm, while it could have been stopped in a little more than half that distance. From this it is argued not only that the engineer negligently failed to give the danger signal, but that he also negligently failed to apply the brakes at the time he says he did apply them. Satterfield, the engineer, offers no explanation as to why his train ran nearly half a mile after he applied the brakes, when according to his own testimony, he could have stopped it in a little more than a quarter of a mile.

We think it could be fairly argued from Satterfield's testimony alone that he did not apply the brakes at the time testified to by him; and that being true, his alleged negligence was a question for the jury to determine. Satterfield having admitted that he recognized the object to be a man when he was within 300 feet of him, it was his duty, under the circumstances, to sound the alarm, and if it was not heeded to immediately apply the brakes; but from his own testimony, it would seem he did not so apply the brakes, since his train ran nearly twice as far as it should have run, before it stopped. This was evidence of negligence upon the part of Satterfield, and the case should have gone to the jury.

Judgment reversed for a new trial.