## Louisville & Nashville Railroad Company v. Weiser's Administrator.

(Decided March 26, 1915.)

### Appeal from Bullitt Circuit Court.

1. Railroads—Trespassers.—Railroad companies owe to trespassers on their tracks no lookout duty.
2. Railroads—Trespassers.—Even though the engineer in charge of a train discovers the presence of a man on the track at a sufficient distance ahead to enable him to stop his train before reaching such person, he is not bound immediately to take steps to stop the train or to slacken its speed, but has a right to assume that such person with due regard to his own safety will leave the

track before the train reaches him; he is bound only to take such steps to stop his train, when under the circumstances, he realizes that the trespasser is either unconscious of the approach of the train or does not intend to leave the track.

3. Railroads—Trespassers.—The necessities of commerce and the convenience of the traveling public require that trains shall be run as near as may be on schedule time; if an engineer was required by law to stop his train or even slacken its speed, every time he discovered a trespasser on the track ahead, the efficiency of railroad operation would be greatly impaired.

BENJAMIN D. WARFIELD and CHARLES CARROLL for appellant.

S. L. TRUSTY and C. P. BRADBURY for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

On one morning in August, 1913, appellee's intestate, Weiser, and one Earl Roberts were carried on a freight train from Paris, Kentucky, to a point near Covington, where they departed therefrom.

They remained around the locality for several hours, passing the time in swimming in the Licking River nearby, and in sitting and lying upon the railroad tracks. Twice that morning, before the accident from which this suit results, they had been warned of approaching trains while they were sitting or lying upon the ties or track, and upon each occasion they barely escaped being run over. Finally, about 10:30 o'clock, while they were each asleep on the railroad track, or on the ends of the ties immediately next to the rails, a passenger train from Lexington, approaching from the south, which aroused Roberts, but did not arouse Weiser, and while Roberts was attempting to arouse Weiser and to pull him off of the track, ran over and killed Weiser and injured Roberts.

This is an action by Weiser's administrator seeking damages, and upon a trial in the lower court the plaintiff was awarded a verdict and judgment for $2,500, and this appeal is prosecuted and a reversal asked upon the sole ground that defendant was entitled to a peremptory instruction.

The evidence of Roberts is that when the approaching train was about 1,200 feet from the point where they were lying the noise from it aroused him; that it was running at the rate of about 30 or 35 miles an hour, and that when the train was about 1,000 feet from them he waved

his arm or gave some kind of signal to the engineer of the train, and that the engineer thereafter responded to that signal by leaning out of the cab window and making a motion of his hand and arm to them to get off of the track; that he continued to undertake to arouse Weiser or pull him from off the track, but was unable to arouse him, and was unable to pull him from the track because of the benumbed condition of his (Roberts') limbs by reason of having remained in swimming too long; that Weiser was at the time lying with his head and one arm on one of the rails of the track, and was instantly killed.

The engineer testified that he was running his train about 35 miles an hour; that when he was about 300 feet from where the men were he discovered something on the track which he at first thought might be an old coat, blanket, or comfort or something like that which had been thrown from some boarding or camp cars which were on the side track at that point; but that in a second or two he discovered that it was a human being, and that he immediately made every effort to stop his train by shutting off the power from the engine, using the emergency brakes and sanding the tracks, but that he was unable to stop it in time to avoid the collision; that he stopped his train some distance beyond and backed to where they were, and then, for the first time, he discovered that there had been two men instead of one on the track; that he had seen no signal from them, and had given them none.

Other witnesses, who were around the boarding cars at that point, stated that the two men had been around there for several hours, and a great part of that time had been sitting on the railroad track, and had twice that morning been warned of approaching trains while so sitting; that finally they both laid down on the track or ties, one with his head to the north and the other with his head to the south.

The inconceivable recklessness of these two men cannot be explained by anything in the record; their conduct in deliberately lying down and going to sleep on the railroad track over which they knew trains frequently ran, and when in the last hour or two they had twice been compelled to abandon the same position by passing trains and had barely escaped injury in each instance, is past understanding and cannot be recon-

ciled with any fact or suggestion that appears in the record. It is not shown that they were drunk or that they were under the influence of drugs or that they were temporarily bereft of their minds.

It is putting it mildly to say that they were deliberate trespassers, and for that reason the company and its employes owed them no lookout duty, but only owed them the humane duty of taking precautions to protect them from injury after the discovery of their peril. Whether their peril was discovered in · time to have avoided the collision must be determined from the evidence of the engineer and Roberts.

Taking as true the evidence of Roberts that when the train was about 1,000 feet away he waved his arm at the engineer and received a response signal from him, and assuming from this statement that the engineer discovered his presence on the track when the train was 1,000 feet away and that the train could have been then stopped before reaching him, and taking as true the uncontradicted statement of the engineer that he only saw one person on the track, and did not know until after his train had stopped and backed up that there were two, still was not the appellant entitled to the peremptory instruction for which it asked?

It has often been held by this court and in other jurisdictions, and is a most reasonable rule, that persons in charge of and operating a railroad train, who see some distance ahead persons upon the track, are not bound immediately to take steps to stop the train, but, on the contrary, have a right to assume that such persons, with due regard to their own safety, will leave the track before the train can reach them. The necessities of commerce and the convenience of the traveling public require that trains shall be run as near as may be on their schedule time, and it is apparent that if every time an engineer discovers a person on the track ahead ·of him he is required to stop his train, or even to slacken its speed, efficiency of railroad operation would be greatly impaired.

In this case, according to the testimony of Roberts, the engineer knew when he was 1,000 feet from him that he was awake and saw the train, for he had given a signal; and what is more reasonable than to assume that he would get off the track? As to the other man, the engineer's uncontradicted statement is that he never saw

but one, and did not know until afterwards there were two. The engineer, owing neither of them any lookout duty, and having discovered only one of them on the track, and knowing from his actions that he was awake, had a right to assume that he would get off the track before the train reached him.

The case of L. & N. R. R. Co. v. Hunt's Admr., 142 Ky., 778, was where the brakeman of a train had been sent forward with a flag to signal a passenger train; he sat down on the end of the ties and went to sleep, and when the passenger train approached he was awakened, and in undertaking to cross the track ahead of it was killed. The court, in disposing of the same question we have here, said:

"When the engineer saw Hunt sitting on the side of the track, he had a right to presume that he would get off before the train reached him, and he was not required to take steps to check his train until, from the circumstances, a person of ordinary prudence, situated as he was, would conclude that Hunt was unconscious of the approaching train. (Johnson v. L. & N. R. R. Co., 91 Ky., 651; Lingenfelter v. L. & N. R. R. Co., 9 R., 116; Nichols v. L. & N. R. R. Co., 9 R., 702; France v. L. & N. R. R. Co., 15 R., 244; Embry v. L. & N R. R Co., 36 S. W., 1123; Murray v. Sou. R. R. Co., 140 Ky., 453.)"

The case of Reynolds v. C., N. O. & T. P. Ry. Co., 148 Ky., 252, was where a railroad employe sat down on the end of a tie on a railroad track and was struck by a freight train; he was not at the time engaged in the business of the employer, and was, therefore, treated as a trespasser. The court, in response to the argument that his peril had been discovered by those operating the train in time to have avoided striking him, said:

"We will concede for argument the plaintiff's position that the testimony, or the excluded, and as he contends, admissible testimony, was sufficient to establish that at the farthest point contended for by him, the point 1,880 feet distant, Reynolds was seen and known to be a man in a position of danger, and we likewise will further concede that the train could have been stopped in 600 feet, the shortest distance claimed by plaintiff. In other words, the case will be considered upon the theoretical facts that for 600 yards the engineer knew that the object was a human being, and that though he could have

stopped his train in 200 yards, he did not stop it.  Under this condition there was no obligation on the engineer or the railway company to at once stop the train.  When the engineer saw Reynolds sitting on the side of the track he had a right to presume that he would.get off before the train reached him, and there was no obligation to check the train until, from the circumstances, a person of ordinary prudence would conclude that. Reynolds was heedless or unconscious of the approaching train.  The mere intervention of a distance of 200 yards, without movement by him, no other fact appearing than Reynolds' presence upon the track, was not sufficient to apprise a person of ordinary prudence that Reynolds would not get out of the way of the approaching train.''

The case of Murray v. Sou. Ry. Co., 140 Ky., 453, was where a deaf man was a trespasser on a railway track, and a crew of railroad workmen were operating a push car.  The car collided with him, and he was injured and brought an action for damages.  In affirming a judgment giving a peremptory instruction, the court said:

''There would have been no trouble if his hearing had been good.  While the men on the car knew him personally, none of them recognized him when approaching on the push car, as he had his back to them and so they had no reason to know of his danger until he failed to step from the track as the women did.  The women did not step from the track until the car was in a few feet of them, and then it was too late to stop the car before it reached Murray.  It has often been held that persons in charge of cars on a railroad track have a right to presume that a trespasser seen on the track will get out of the way, and that they are not required to stop the car unless they have reason to believe that he is unconscious of his danger.''

In the case at bar, accepting as true the statement of Roberts that the engineer saw him on the track at the distance of 1,000 feet, no duty devolved upon the engineer to stop his train or slacken its speed until he had some reason to believe that the trespasser was not going to leave the track; and taking as true the uncontradicted statement of the engineer that he made every effort to stop his train, but was unable to do so, after discovering the peril, the peremptory instruction should have been given.

Manifestly, the peril was discovered only when the engineer finally realized that the trespasser was not going to leave the track.

The judgment is reversed, with directions to grant appellant a new trial, and for further proceedings consistent herewith.