## STEGGELL v. SALT LAKE & U. R. CO.

No. 3032.   Decided August 1, 1917.   (167 Pac. 237.)

1. RAILROADS—PERSONS ON TRACK—DUTY OF TRAIN OPERATORS.  The operators of a train have a right to assume that a person of mature years, sound of body and mind, who is walking on the track, on a bright day, with an unobstructed view, toward the rapidly approaching train, which on his entering on the track was more than a mile away, will see and hear, as is his duty, the approaching train, and will be timely in removing himself to a place of safety.  (Page 146.)

2. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR COURT. Where there is but one reasonable inference to be drawn from the facts and circumstances disclosed by the testimony, namely, that the accident was solely and primarily due to deceased's contributory negligence, without opportunity on defendant's part, in time to have avoided the accident, contributory negligence becomes a question for the court, and is not within the province of a jury.[1]  (Page 148.)

Appeal from District Court, Fourth District; *Hon. A. B. Morgan,* Judge.

Action by Alvina Steggell against the Salt Lake & Utah Railroad Company.

Judgment for plaintiff.  Defendant appeals.

REVERSED.

*Moore, Mitchell & Maginnis* for appellant.

*S. A. King* for respondent.

CORFMAN, J.

This was an action brought by plaintiff to recover damages for the death of her husband, alleged to have been caused by the defendant's negligence.  Trial was had to a jury, resulting in a judgment for plaintiff.  Defendant appeals.

The complaint, in substance, alleges the corporate existence of the defendant; that at all times mentioned therein the defendant was engaged in operating a railroad; that while

[1]*Johnson* v. *R. G. Ry.,* 19 Utah, 77, 57 Pac. 17; *Holland* v. *O. S. L. R. R. Co.,* 26 Utah, 209, 72 Pac. 940; *Wilkinson* v. *O. S. L. R. R. Co.,* 35 Utah, 110, 99 Pac. 466.

Alfred Steggell, the husband of the plaintiff, was, on the 25th day of September, 1914, returning from his work at Lehi sugar factory to his home in American Fork City, along the public highway upon which the railroad track of the defendant had been lawfully laid, he was met by one of defendant's trains while walking upon a used footpath between the rails of defendant's track, and run over and killed; that the train was being operated at a high and dangerous rate of speed, without the ringing of a bell, blowing of a whistle, or the giving of other warning of approach; that the acts of defendant were careless, wanton, and negligent, and with reasonable diligence on the part of the defendant the accident would not have happened. The answer denies all liability for the accident, through negligence or otherwise, and affirmatively alleges trespass and contributory negligence on the part of the deceased.

The testimony given at the trial, briefly stated, shows, without conflict, that Alexander Steggell, the husband of plaintiff, prior to his death, lived in American Fork City, and had been employed at the Lehi sugar factory, about three miles westerly from his home in American Fork City. The defendant owned and operated an electric railroad running from Salt Lake City to Provo. Between the sugar factory and American Fork City the defendant's track was laid upon a public highway, and the main-traveled road from the sugar factory to American Fork City, going east, runs parallel to the defendant's track on the south side to a point about one-half mile west of the central portion of American Fork City, where it crosses defendant's track to the north side, and then again runs parallel to defendant's track through American Fork City. At the place of the accident there was a slough on each side of defendant's track. North of the track the slough came to the end of the ties. South of the track was a dry wagon road within a foot or eighteen inches of the railroad ties, and just beyond the wagon road was the south slough. On the day of the accident the deceased had left the sugar factory for his home, walking east toward American Fork City along defendant's track. The track was unobscured and ran in a

straight line, practically due east and west on a one or one and one-half per cent. grade, from the east. The defendant's train was running west from American Fork City, and consisted of two cars, a motorcar, being a flat car with a motor and a cab on the rear or west end, and a tower car, also a flat car, with a tower built upon the top of uprights some distance apart, with cross-arms. The train was running at about twenty-five or thirty miles per hour, the tower car to the front, the motorcar to the rear, of the train. The trainmen observed the deceased approaching on the track from the west for a distance of about a half mile, and continued to observe him until he was struck by the train. No attempt was made to check the speed or stop the train until after it was too late to avoid striking the deceased. At the time of the accident the deceased was thirty-nine years of age, in good health, strong and able-bodied, with the exception that his eyes were somewhat affected through the lime used at the factory where he was working, but his eyesight and hearing were good, and generally he was possessed of all his faculties. On the public road close behind the deceased were several of his fellow workmen in vehicles, who had observed the deceased walking on the track and the train approaching him. The deceased had his hat pulled down, as if to shade his eyes from the rising sun. They shouted at him. He turned his head, looked back toward them, threw up his hand, and was almost instantly struck by the train and killed.

Irving Ritchins, a witness on behalf of the plaintiff, testified that at the time of the accident he and Edward Robinson, also a witness in plaintiff's behalf, were riding in a buggy on their way to American Fork; that when he first saw the deceased he was about 3 poles ahead of them, and they were watching him all the time. He testified:

"I did not realize Mr. Steggell was in danger until he was pretty close. He was walking with his head down pretty low. That was his customary way of walking. With his head so low that he couldn't see anything, just the ground in front of him. He always had his hat down kind of low on his forehead. I didn't call out a warning because I thought he would step

off the track; because I thought he would see the train and step off the track I did not try to warn him, and until I saw he was not going to get off. I was watching him and the train. It was clear weather.''

Edward Robinson, a witness for the plaintiff, testified:

''Mr. Ritchins, who just testified, rode with me in a single buggy when we left the factory that morning. I first saw Mr. Steggell ahead of us, walking up the railroad track of the Orem Company about fifty rods ahead. I saw the train up in town. About a block from the depot. I could see the train all the time. We were about 115 feet behind Mr. Steggell when he was struck. I never noticed the train much after it passed. I never estimated the speed of trains or cars. I think when this train passed it was going thirty-five or forty miles an hour. I am just guessing at it. I didn't hear any whistle. I wasn't paying much attention to the whistle. The rattle of the buggy might have prevented me from hearing the whistle. I was giving most of my attention to my horse. I heard Mr. Ritchins holler to Mr. Steggell, and saw Mr. Steggell turn his head and look towards the west. Then he looked back and turned his head to the front and threw up his hand. I did not know whether Mr. Steggell was in danger of being hit by the train, and thought he would step off any minute. That is the reason I didn't yell. There was nothing in Mr. Steggell's appearance that would indicate to me that he was not going to step off the track.''

William Bush, also a witness on behalf of plaintiff, testified:

''The train was pretty close to Mr. Steggell before I became alarmed myself. Maybe a couple of hundred feet. I got scared when he kept on along the track. I was afraid he did not see the train. I was afraid he was going to get struck. I yelled to him just before the train struck him. I didn't yell before because I did not have any idea but that Mr. Steggell would step off out of the way. I thought he had seen the train.''

David Condor, a witness for the plaintiff, testified:

''Mr. Steggell continued to walk straight up the track. I did not see him vary his course at all. When I first saw the

train it had got pretty close to the crossing. It was going fast then. I was watching Mr. Steggell particularly. I did not hear any whistle blow or bell sounded. Somebody hollered before Mr. Steggell was struck, and he turned his head and looked back and threw his hand up, and by that time he was gone. The train had struck him. There was a man on the front of the car. I noticed him just before the train struck Mr. Steggell. I saw him give the signal. He threw his hands quick. Gave the washout signal. There were several men on the car on the back. Just as quick as the signal was given they stopped the train. The train went about 4½ telephone poles before they got it stopped. I did not observe the speed of the train slacken before the man gave the washout signal. I was watching Mr. Steggell, following him with my eye for some time. Towards the last I became alarmed for his safety, when the man hollered. I did not become alarmed until he got pretty close. If I had become alarmed before I would have given him some warning by yelling or whistling. Up to the time that he got to about one hundred to fifty feet of the train I thought he would step off out of the way. I figured that at any time within one hundred to fifty feet he would have plenty of opportunity to step off the track.''

Frank Laub, a witness for the defendant, testified:

''I was on the train going west at the time of the accident. Mr. Frankland was at my right side. I saw Mr. Steggell walking up the track toward us as we were going west that day. He was walking at a good rate of speed for a man. When we got about fifty to thirty feet from him, I gave a violent stop signal. I watched him as he came toward us, and I should judge about 200 feet away he made a turn halfway around with his head, still walking. Stepped to the north side of the track and over the rail with his foot, then came back and threw up his hands and went under. He was on the south side of the track. The motion of his body looked as though he was going off the south side by his actions, and then stepped off to the north side, and then looked as though he was going to step off the north side, and then he stepped back to the track. I gave the stop signal as he stepped back from the

south side of the track. I gave a shout myself, and Mr. Frank-
land whistled a violent whistle, and then there was a shout
from the vehicle as near as I can recall all about the same time.
The train was going then at the time it struck Mr. Steggell,
or just before, about twenty or twenty-five miles an hour. It
ran 180 feet as near as I can recall, after it struck him. I
have a distinct recollection of the whistle blowing just before
the accident. The train whistled good and loud 400 feet
before it got to Mr. Steggell, and blew before it got to the
crossing. It blew for the crossing.''

Ronold Nicholes, another witness for the defendant, testi-
fied:

''I was on the motorcar just at the west end of the cab.
I saw a man coming up the track, at first, about a mile and
a quarter west of the station. He was walking straight up the
railroad track. As he got close to the car, he moved to the
north side; that is, the north rail. It looked as though he had
seen the car and made for the north side of the track. Mr.
Laub and Mr. Frankland were on the front end at the time
of the accident.''

Heber Frankland, defendant's witness, testified:

''I was on the train when Mr. Steggell was struck at Ameri-
can Fork. We were going from American Fork to Lehi that
morning. We had twenty minutes to go a distance of three
miles. I saw a man on the track when we were about the
second street east of the crossing. The whistle was blown for
the crossing when the train was about 150 or 200 feet away.
The man was walking directly toward us, and we got pretty
close to him. I naturally thought he was going to step off, and
when I got about 200 feet from him, I was standing right on
the edge of the car. I yelled and I whistled, and the same time
a yell and a whistle came from the other way. It sounded to
me it came from the team. The man turned his head. At
that time he was walking close to the south rail, right along
inside and at that time I gave the emergency signal. He took,
I should judge, about three steps diagonally across the track,
came to the rail, stepped over with his left foot, took one more
step, and throwed his hands up. I reached down to try and

catch him, but my grasp was not strong enough.  At the time
I gave the signal to stop the train was going about twenty to
twenty-five miles an hour.  I know the signal was obeyed by
the jar of the train and the sound of the brakes immediately.
I had already heard a short blast of the whistle.  I counted the
rails from the train back to where the body was, and it was
between six and seven rail lengths.  The condition of the road-
way on either side of the railroad track at that point was such
that Mr. Steggell could have stepped off on either side and
been safe.''

At the conclusion of plaintiff's testimony the defendant
moved for a nonsuit on the grounds: (1) That no negligence
on the part of the defendant had been shown; and (2) should
the court conclude that negligence had been proven, then the
evidence established that the deceased was guilty of con-
tributory negligence as a matter of law.  The motion was
denied.  The defendant also requested the trial court to in-
struct the jury to return a verdict against the plaintiff in
favor of the defendant, ''no cause of action.''  This request
was refused.  Motion for a new trial was made and denied.

The foregoing rulings of the trial court, together with the
court's refusal of admission and rejection of certain testi-
mony, are assigned as error, and are apparently the principal
grounds contended for and relied upon by the defendant for
a reversal of the judgment of the trial court.

Having carefully reviewed the record, we do not deem it
necessary to here enter upon a discussion of the questions
raised under the rulings of the court in the admission nor in
the exclusion of testimony at the trial other than to say we
do not think that, in that regard, the defendant was precluded
from having a fair trial, nor that the trial court in its rulings
committed errors prejudicial to the defendant.  The more
serious questions arise from defendant's contention that the
trial court committed error in denying defendant's motion
for a nonsuit, and in refusing defendant's request for a
peremptory instruction to the jury to return, under the
evidence, a verdict against the defendant and in favor of the
plaintiff, no cause of action.  These, practically, involve but

one question: Whether or not the plaintiff, under the facts and circumstances disclosed by the record, is precluded as a matter of law from claiming damages at the hands of the defendant.

After reviewing all the evidence and quoting at some length the testimony of witnesses, both for plaintiff and defendant, as premises for this court's decision, we do not feel called upon to discuss at any great length the facts and circumstances surrounding the accident complained of by the plaintiff in this action. Conceding, as contended for by plaintiff, that the deceased and others were accustomed to walk upon the defendant's track, with a knowledge and acquiescence on the part of the defendant, confessedly the track itself was a place of great danger, necessarily and rightfully used by the defendant in the operation of its trains. The uncontradicted testimony of the defendant's train crew testifying at the trial shows that the deceased was in plain view, and observed by them for at least a half mile while the defendant's train and the deceased were approaching each other; that the day was bright and the view unobstructed. They testified, as did the witnesses for the plaintiff, that they assumed the deceased would step off the track in time to avoid injury to himself. It is conclusively shown that the deceased was able-bodied, of sound mind, and possessed of all his faculties; that he could have readily avoided the accident by taking a step or two either to the right or left of the track to a place of perfect safety, an absolute and continuing duty we think he owed to himself right up to the time he met and was run against by defendant's train; a duty, we think, the defendant momentarily expected he would perform, as did the many witnesses who observed him walking on the track while the defendant's train was approaching him.

To say that, under the circumstances and conditions surrounding this accident, as disclosed by the undisputed testimony, the defendant was negligent, or, seeing the plaintiff's position and conduct while walking toward the approaching train, it recklessly or wantonly failed in its duty toward the deceased, is to say that, in every case where a footman is seen

approaching a moving train it becomes the duty of the train crew or operators in charge to at once assume that no duty rests upon the footman to take any responsibility on himself or to exercise any care or precaution for his own personal safety and protection; that the operators of the train must bring it to a standstill until the footman becomes mindful of the fact that he has placed himself in a dangerous position and concludes to step aside and permit the train to pass and subserve, in some measure, the convenience and safety of the public. Where, as here, the undisputed facts are the deceased, being of mature age, sound of body and mind, without necessity chooses to enter and walk upon the defendant's track when the day was bright, the view unobstructed for more than a mile before him, and deliberately walk along the track in view of a rapidly approaching train which was, upon his entering the track, more than a mile away, by every reasonable hypothesis the defendant had the right to assume that he would see and hear, as it was his duty to see and hear, the approaching train, and that he would be timely in removing himself to a place of safety and avoid injury. Elliott on Railroads, vol. 3, section 1095; *Louisville & N. R. Co.* v. *Weiser's Adm'r*, 164 Ky. 23, 174 S. W. 734.

The plaintiff strenuously contends that the defendant was negligent in failing to ring the bell, blow the whistle, or to give other warning or signal of approach; but as against the testimony of witnesses in behalf of plaintiff, who at most merely undertook to say they did not hear any signal, positive and convincing testimony appears in the record that the whistle was blown and the bell sounded in ample time to have warned the deceased of the approaching train. Conceding, for argument sake, no signal was given of the approaching train, under the attending circumstances as disclosed by the record it still remains inconceivable that plaintiff would, after placing himself in the perilous position of walking upon a railroad track with which he was familiar, knowing that trains were liable to be passing at any time, remain wholly indifferent to the attending risk and fail to exercise any precaution whatever for his own safety.

Necessarily, after carefully reviewing all the testimony and the authorities cited by both parties, we are forced to the conclusion that the application of the defendant for a nonsuit in this action should have been granted by the trial court, as should likewise the defendant's request for a directed verdict, "no cause of action," been complied with.

We have carefully examined the authorities cited in respondent's brief, and not in a single case are the facts and circumstances, as disclosed, found to be analogous to the case at bar, nor does the law as there announced divert        2 from the well-established doctrine that where there is but one reasonable inference to be drawn from the facts and circumstances disclosed by the testimony, and that is the accident complained of was solely and primarily due to the contributing negligence of the deceased, without opportunity on the part of the defendant in time to have avoided the accident, contributory negligence at once becomes a question of law for the court, and is not within the province of the jury to pass upon. *Johnson* v. *R. G. Ry.*, 19 Utah, 77, 57 Pac. 17; *Holland* v. *O. S. L. R. R. Co.*, 26 Utah, 209, 72 Pac. 940; *Wilkinson* v. *O. S. L. R. R. Co.*, 35 Utah, 110, 99 Pac. 466; *Glascock* v. *Railroad Co.*, 73 Cal. 137, 14 Pac. 518; *Imler* v. *Northern Pac. Ry. Co.*, 89 Wash. 527, 154 Pac. 1086, L. R. A. 1916D, 702 Ann. Cas. 1917A, 933; *Barber* v. *East & W. R. Co.*, 111 Ga. 838, 36 S. E. 50; *Ward* v. *Atlantic Coast Line,* 167 N. C. 148, 83 S. E. 326; *Iowa Central R. Co.* v. *Walker,* 203 Fed. 685, 121 C. C. A. 579; *Campbell* v. *Kansas City, Ft. S. & M. R. Co.*, 55 Kan. 536, 40 Pac. 997; *Hart* v. *Northern Pac. R. R.*, 196 Fed. 180, 116 C. C. A. 12.

It is ordered that the judgment of the trial court be reversed. Costs to appellant.

FRICK, C. J., and McCARTY, THURMAN, and GIDEON, JJ., concur.