## Hines, Director General of Railroads v. Taylor's Adm'r.

(Decided June 10, 1921.)

## Appeal from Harlan Circuit Court.

1. Railroads—Federal Control Act—Venue.—Suits against carriers under Federal control must be brought in the county where plaintiff resided at the time of the accrual of the cause of action, or in the county or district where the cause of action arose.

2. Railroads—Federal Control Act—Negligence.—Prior to the Federal Control Act an administrator, under sec. 73 of the Civil Code, could bring an action against a carrier for negligence in the county of his residence, if the carrier passed into that county, although his intestate was killed or at the time of his death resided in a different county.

3. Railroads—Federal Control Act—Jurisdiction.—Where according to the uncontradicted facts both the decedent and administrator resided in the county of the latter's appointment and the suit was brought in that county the circuit court had jurisdiction of the action, and this whether the action was brought under Federal control or under the provisions of the Civil Code.

4. Railroads—Trespassers on Track.—Where trainmen discover a person on the track is in a place of danger they must exercise ordinary care by the means at their command to save such person from injury, as no one has the right to wantonly and needlessly cripple a human being, although he be a trespasser.

5. Railroads—Trespassers on Track.—Persons operating a train who see persons on the track some distance ahead are not bound to immediately take steps to stop the train, but have the right to presume the persons will leave the track before the train reaches them.

6. Railroads—Trespassers on Track—Negligence.—In such cases it is not negligence in law on the part of the engineer if he fails to

stop his engine in time to prevent an accident unless he knows the party on the track is unconscious of his danger or is laboring under some disability or his condition prevents him from keeping out of the way or the party's action or appearance gives evidence of some disability on his part.

7. Railroads—Trespassers.—The presumption that a trespasser will get off the track before the train reaches him does not exist as an abstract proposition of law and whether it obtains in any particular case depends upon all the circumstances surrounding parties at the time.

WM. LOW and BENJAMIN D. WARFIELD for appellant.

J. G. and J. S. FORESTER for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Affirming

About 5:30 p. m. on October 24, 1918, plaintiff's intestate was struck and killed by a south bound passenger train between Wallsend and Pineville. The train consisted of two baggage cars and four passenger coaches. For at least a quarter of a mile from the point of accident the track is straight and there was nothing to obstruct the view of the engineer.

In this action to recover damages for the death of his intestate, there was a verdict in plaintiff's favor for $4,000, to reverse which the defendant has prosecuted this appeal.

The two main points urged for reversal are: (1) whether the court had jurisdiction of the action; (2) whether defendant was entitled to a peremptory instruction on the merits.

It is defendant's contention that neither decedent nor his brother, the administrator, was a resident of Harlan county. At the time of the accident the railroad was being operated by the Director General of Railroads under the Federal Control Act. Prior to the enactment of this Federal legislation, in construing section 73 of the Civil Code, it had been held that an administrator could bring an action against a carrier for negligence, in the county of his residence if the carrier passed into that county, although his intestate was killed, or at the time of his death resided, in a different county. I. C. R. R. Co. v. Stith's Admx., 120 Ky. 237, 85 S. W. 1173, 1 L. R. A. (N. S.) 1014.

By General Order No. 18a, issued by the Director General on April 18, 1918, it is provided:

"It is therefore ordered that all suits against carriers while under Federal control must be brought in the county or district where the plaintiff resided at the time of the accrual of the cause of action or in the county or district where the cause of action arose."

The only proof as to the residence of the administrator and his deceased brother is furnished by the former. He testifies that at the time of the accident, he, the administrator, was living in Virginia, and shortly thereafter moved to Harlan county, but that the decedent was residing in Harlan county with his wife and child at the time of his death; that about two weeks previous to October 24th, decedent went to Virginia, because of the serious illness of his mother, but had returned home the day he was killed.

The administrator was appointed on motion of decedent's widow. He appears to have been somewhat of a nomad. At the time of trial he was living in Virginia, but says he resided with his family in Harlan county until about a month and a half before the trial.

On this evidence we are urged to reverse the judgment because of the want of jurisdiction in the county court to appoint the administrator and of the circuit court to try the action. Unless it be so ordered defendant says it was at least entitled to the instruction which it tendered submitting to the jury the question of whether at the time of his death decedent was a resident of Harlan county. We are of the opinion that the court did not err in either instance. According to the uncontradicted facts decedent was a resident of Harlan county at the time of his death, the administrator resided in said county at the time of his appointment, therefore, the circuit court of that county had jurisdiction of the action. L. & N. R. R. Co. v. Mitchell, 162 Ky. 253, 172 S. W. 527.

We will pass to the second question, to-wit, the refusal to give the peremptory instruction. Decedent was concededly a trespasser, but we have said in a number of cases that when trainmen discover that a person on the track is in a place of danger they must exercise ordinary care by the means at their command to save such person from injury, as no person has the right to wantonly and needlessly cripple a human being, although he be a trespasser. Willis' Admr. v. L. & N. R. R. Co., 164 Ky. 124, 175 S. W. 18.

Defendant's engineer testifies he saw decedent in the middle of the track going in the same direction as the

train, when the latter was distant about a quarter of a mile; that when at such distance from decedent he gave the crossing signal and decedent turned about half way around and waved his hand, as much as to intimate he knew the train was coming.   When he, the engineer, saw he was gaining on decedent, who was still on the track, he grabbed the whistle with one hand and pulled it two or three times and put on the emergency brake with the other hand.   By this time the man had left the middle of the track and walked to the right and to the outside of the rails, when he was struck by the pilot of the engine.   The engineer says that after he gave the crossing signal, and decedent raised his hand, he took it for granted the man would get off the track, and as soon as he realized there was a question whether he would do so, he applied the emergency.   The train was then only 75 or 80 feet from decedent, its estimated speed was 35 miles an hour, and it is admitted it could not have been stopped, under the circumstances, in less than six car lengths or in about 300 feet.

In L. & N. R. R. Co. v. Weiser's Admr., 164 Ky. 23, 174 S. W. 734, it is said:

"It has often been held by this court and in other jurisdictions, and is a most reasonable rule, that persons in charge of and operating a railroad train, who see some distance ahead persons upon the track, are not bound immediately to take steps to stop the train, but, on the contrary, have a right to assume that such persons, with due regard to their own safety, will leave the track before the train can reach them.   The necessities of commerce and the convenience of the travelling public require that trains shall be run as near as may be on their schedule time, and it is apparent that if every time an engineer discovers a person on the track ahead of him he is required to stop his train, or even to slacken its speed, efficiency of railroad operations would be greatly impaired."

See also Reynolds' Admr. v. C. N. O. & T. P. Ry. Co., 148 Ky. 252, 146 S. W. 416.

This is a fair statement of the rule governing the rights of the parties to this appeal.   In such cases it is not negligence, as a matter of law, on the part of the engineer if he fails to attempt to stop his engine in time to prevent an accident unless he knows the party on the track is unconscious of his danger, or is aware of the fact that the party is laboring under some disability that pre-

vents him from knowing the danger he is in, or his condition is such as prevents him from going or keeping out of the way; or unless the enginemen see evidence of such a disability from the party's actions or appearance.  23 Cyc 800; Thompson on Negligence, sec. 1736; L. & N. R. R. Co. v. Hunt's Admr., 142 Ky. 778, 135 S. W. 288.

Where the conduct of the traveller is such as to excite doubt that he is not possessed of the ordinary faculties the engineer is bound to use greater caution.  Shearman and Redfield on Negligence, sec. 483.

But the presumption that a trespasser on a track will get off before the train reaches him does not exist as an abstract proposition of law; but whether or not it obtains in any particular case depends upon all the circumstances surrounding the parties at the time.  23 Cyc. 800.

As said in Willis' Admr. v. L. & N. R. R. Co., *supra*:

"If, however, the persons in charge of an engine were seen looking ahead at a time when the trespasser was in plain view, and in such close proximity to the train as that in the exercise of reasonable care they might anticipate that he was not aware of its approach or apprehensive of his danger, and they failed to give any warning of the approach of the train or take any steps to avoid injury, this evidence would be sufficient to take the case to the jury on the theory that after discovering the peril of the trespasser, they failed to take the required care to avoid injury to him."

Two witnesses testify that at three o'clock of the afternoon of the accident, decedent was seen in an intoxicated condition at the Pineville passenger station; and Frances Farmer, who resided about 100 yards from the track and who saw decedent some time before the accident, testifies that he was travelling very fast down the track; he was going from one s ide of the track to the other, and seemingly paid no attention to the distress signals that were given about the time the emergency brakes were applied.  This evidence necessitated a submission to the jury, as was done, as it raised the question of whether, after the discovery of the presence of the decedent on the track, ordinary care was used to avoid injuring him.  For example in Williamson & Pond Creek R. R. Co. v. Charles' Admr., 168 Ky. 41, 181 S. W. 614, we said:

"It is quite true that this court has held in a number of cases that where the presence of one is discovered on

a track ahead of a train that it does not devolve upon those in charge of the train to immediately stop it or even slacken its speed, the trainmen·having the right to assume, under ordinary conditions, that the person would leave the track before the train reached him; but it has also held that it is a question for the jury to determine whether the trainmen exercised ordinary care to avoid the injury after discovering his presence on the track."

This is the question in the .instant case.   It was for the jury, under the circumstances presented by the record, to say whether the engineer exercised ordinary care to avoid the injury after he was aware of decedent's presence and demeanor on the track.

Instruction No. 1, of which chief complaint is made, is a clear statement of the law governing this case.   The first part of said instruction is as follows:

"No. 1.   Gentlemen of the jury:   The plaintiff's intestate, Condy Taylor, was at the time of his injury a trespasser and those in charge. of the train owed him no duty until his peril was actually discovered by them, and although the engineer saw the decedent in front of the engine at a point so far distant that he was not in any immediate danger, the engineer was not required to take steps to stop the train or to slacken its speed, but had the right to assume that the decedent with due regard for his own safety would leave the track·in time to avoid the injury.   But it was the duty of the engineer in charge of the train to slacken the speed of the train and to use all reasonable means at his command to avoid injuring the decedent when he became aware that the decedent did not intend to leave the track."

Defendant concedes the correctness of this part of . the instruction, but insists the court erred in incorporating in said instruction the second literary paragraph thereof, which is as follows:

"Now if you shall believe from the evidence that after the engineer in charge of the train became aware of the fact that the decedent did not intend to leave the track and his position was dangerous or perilous, and failed to use ordinary care to avoid striking the decedent, and as a result thereof he was struck and killed at a time when he was using ordinary care for his own safety, then you ought to find for the plaintiff.   Unless you so believe from the evidence then you ought to find for the defendant."

The vice of this criticism lies in the fact that defendant ignores entirely the testimony of the witness Frances Farmer.

Finding nothing in the record authorizing a reversal of the judgment same must be and is accordingly affirmed.