PAULINE PRECODNICK, ADMINISTRATRIX, &c., OF SAM-
UEL PRECODNICK, DECEASED, PLAINTIFF IN ERROR,
v. LEHIGH VALLEY RAILROAD COMPANY OF NEW
JERSEY, DEFENDANT IN ERROR.

Argued July 11, 1906—Decided March 4, 1907.

The plaintiff's intestate was a track laborer in the employ of the de-
fendant. While it was shown that it was part of the system
under which the men worked together as a gang upon the tracks
that the foreman should warn them of approaching danger, yet it
appeared that it was the custom that when one was working
alone, and separated from the rest of the gang, he should look out
for his own safety. Deceased had been sent to a point to work
three hundred and twenty-five feet from the other men. He was
run down by a train and killed. *Held*, that the defendant owed
no duty to the deceased, while so working, of giving him warn-
ing. The risk was an obvious one, and assumed by deceased as
one of his employment.

On error to the Supreme Court.

For the plaintiff in error, *Herbert Clark Gilson*.

For the defendant in error, *Collins & Corbin*.

The opinion of the court was delivered by

VROOM, J. The plaintiff's intestate was employed by the de-
fendant as a track repairer and was a member of a gang of ten
or twelve men who were working on the east side of a highway
bridge near Park View, N. J. During the morning of the ac-
cident Precodnick had been sent by the foreman to a point on
the west side of the bridge, two hundred and twenty-five feet
west therefrom, to assist a signal and repairman there. The
bridge was one hundred feet wide.

The train that ran down the deceased had passed over the
track on which the men were working some ten minutes before
the accident; it was going east on the eastbound freight track.
A passenger train was following it, so it pulled clear on the

switch and allowed the passenger train to pass. After stopping for ten minutes, the conductor of the freight inquired of the foreman of the gang if it was all right to come back, and on being informed that it was, he then gave the signal for the train to come back, and the engineer blew three long whistles, a reply to the conductor that he saw the signal. The train was backing and was going from six to eight miles an hour when it got to the bridge. It passed the foreman and other men on the easterly side of the bridge, and when the caboose got to the bridge the conductor and foreman saw the deceased in the center of the track between the rails, and they and the other men tried to give him warning. He was standing on the eastbound track with his back to the approaching train, while a train going west on the adjoining track had passed the backing train. The deceased took no notice of the warnings given to him by the conductor and the men working on the east side of the bridge, and probably he did not hear them, owing to the noise made by the other train on the westbound track. He was struck by the backing train and killed.

It further appeared in the case that it was the custom, when a man is separated from the gang he is working with and sent out by himself, that he is supposed to look out for his own safety.

At the close of the plaintiff's case a motion to nonsuit was made and refused by the trial judge, but at the close of the case a motion was made for the direction of a verdict for the defendant upon the ground that it then appeared affirmatively that there was no negligence on the part of the defendant, and that the deceased had assumed the risks and was guilty of contributory negligence. This motion was granted upon the ground that there was no evidence of negligence on the part of the defendant.

The contention on the part of the plaintiff was that the duty of the defendant to the deceased, in the exercise of reasonable care to secure the safety of the deceased, required that it give a careful, timely and adequate warning of the approach of trains in order that the dangers necessarily incident to the employ-

ment might not-be increased, and that the deceased did not assume as a risk of his employment negligence on the part of the defendant in securing his safety by adopting and maintaining a safe system of warning of the approach of trains.

In support of these propositions reliance was had upon the case of *D'Agostino* v. *Pennsylvania Railroad Co.,* 43 *Vroom* 358. There the Supreme Court held that it was the duty of the railroad company to give warning of the approach of trains, and that the proofs showed that the custom of the company was to give such warning, and that the men relied upon such warning being given. It also appeared that the foreman left the work—going on some temporary duty—leaving the men unprotected and without cautioning D'Agostino to look out for himself. This carelessness, which resulted in the death of D'Agostino, was held to be the carelessness of the company.

The same custom or system as to warning existed in the present case, and if plaintiff's intestate had been working with the gang, under the immediate direction of the foreman, he would have had the right to expect warning of approaching danger, and the failure to give it by reason of the negligence of the foreman would have been the negligence of the company, for which it would have been liable. The proofs, however, disclosed that he was not so working. He had been sent away from the rest of the gang and was at work three hundred and twenty-five feet from them, and was out of the hearing of the foreman's voice in case of noise created by passing trains. It must have been manifest to him that working there he could not rely upon the customary warning of danger from approaching trains, and it would be incumbent upon him to look out for his own safety. It cannot be contended that it was the duty of the foreman to leave the rest of the gang and go with him, with the view of notifying him of approaching danger, or that there was a duty resting upon the company to send someone, other than the foreman, with him to warn him. In my judgment the risk at that place clearly became an obvious one and must be held to have been assumed by the deceased as one of his employment, and this is the more apparent when, by the uncontradicted proof in the case, it was

shown that it was the custom that when a man was sent out by himself he was supposed to watch out for his own safety. Deceased therefore had "no right to expect the warning before the danger became actual," as in the D'Agostino case.

This case is also distinguishable from that of *Albanese* v. *Central Railroad Co.,* 41 *Vroom* 241. There the plaintiff's intestate was working on a railroad track in such a position as prevented his seeing an approaching train, and the engineer of the train, having the workman in sight, failed to sound a warning and ran him down. This court said that "the fact there was no custom to give signals and that no instructions were issued to workmen about the approach of trains may have resulted from a belief that, ordinarily, the workmen were exposed to no danger which, with reasonable care, they could not avoid, that ordinarily they would 'look out for themselves,' but it surely would not induce a workman to expect that, if he were actually working on the track in such a position as prevented his seeing an approaching train, the engineer of the train, having the workman in sight, would fail to sound a warning or run him down. Such exceptional conditions required, and therefore justified, the expectation of an audible signal, whether signals were customarily given or not." It cannot be contended that in the case under consideration the deceased was working in such a position as to prevent his seeing the approaching train. True, he was working with his back to the train, yet could have seen the train had he looked. He knew he was in a place of danger, and ordinary caution should have impelled him from time to time to make observations, not only in front, but to the rear, in order to guard against any possible risk from trains approaching from either direction.

The train was a long one and was backing, and deceased was not in sight of the engineer, as was the workman in the Albanese case. The usual signal for backing—three long whistles—had been given when the train began to move, and every effort was made to warn deceased as it neared the place where he was working, when it was seen he did not notice its approach; but the cries of the men calling to him were evi-

dently drowned by the noise of a passing train. It was necessary for the train to back in the course of its operation, and I find in the case no proof of the want of any reasonable care on the part of the employes of the defendant company. There exist no exceptional conditions which bring this case within the ruling of *Albanese* v. *Central Railroad Co., supra.*

The case was tried before the same learned justice who wrote the opinion in the Albanese case, and the facts justify the distinction made by him between the two cases. I find nothing calling for the submission of the case to the jury, and agree with the direction of a verdict upon the ground that there was no evidence of negligence on the part of the defendant.

The judgment below is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, HENDRICKSON, SWAYZE, REED, VROOM, GREEN, GRAY, J.J. 9.

*For reversal*—FORT, TRENCHARD, BOGERT, VREDENBURGH, J.J. 4.