JORDAN, Administrator, Appellant, vs. OSBORNE and others,
Receivers, Respondents.

*October 27, 1911—January 9, 1912.*

*Electric railways: Negligence: Speed: Signals at highway crossings:
Positive and negative testimony: Questions for jury.*

1. In the absence of peculiar circumstances or particular conditions
   other than a highway crossing somewhat obscured by trees
   and buildings, a speed of fifty miles per hour on an electric in-
   terurban railway in the open country cannot be said to be ille-
   gal or negligent.
2. Ordinary care would require a signal of the approach of a car
   to such a crossing.
3. Testimony of a witness whose mind "was pretty well occupied"
   that he did not hear any whistle as an electric car approached
   a highway crossing was not sufficient to rebut the positive tes-
   timony of the motorman that he blew the whistle, or to carry
   the question of negligence in that respect to the jury.

APPEAL from a judgment of the circuit court for Kenosha county: E. B. BELDEN, Circuit Judge. *Affirmed.*

For the appellant there was a brief by *Houghton, Neelen & Houghton,* and oral argument by *A. B. Houghton.*

For the respondents there was a brief by *Fisher & Fisher,* attorneys, and *Bull & Johnson,* of counsel, and oral argument by *Peter Fisher.*

The following opinion was filed November 14, 1911:

TIMLIN, J. The plaintiff was nonsuited, and the inquiry is, Was there a *prima facie* case made for the jury, giving the evidence and all reasonable inferences therefrom their utmost probative effect? On the subject of defendants' negligence it is shown that they are operating as receivers an electric interurban railway running between Milwaukee and Chicago. The deceased came to his death on October 2, 1908, in consequence of a collision between his automobile and defendants' electric car at a highway grade crossing of the interurban railway between Racine and Kenosha. The schedule time of the car between Racine and Kenosha was twenty minutes, the distance ten miles, and there were in this distance five or six stops. The distance between Racine and Evanston was fifty miles, and the time one hour and fifty-two minutes including stops. So that the whole distance had to be covered at a rate of between twenty-six and twenty-seven miles an hour, and the distance between Racine and Kenosha at the rate of thirty miles an hour including stops.

The plaintiff's evidence is directed to two grounds of negligence, namely, excessive speed and failure to signal for the crossing. The highest estimate of speed is fifty miles per hour. We cannot close our eyes to the fact that in order to obtain an average speed, including slackening and stops, of thirty miles an hour, the speed at some points must reach very close to, if not quite touch, fifty miles per hour. It is common knowledge that passenger trains on a good roadbed fre-

quently exceed this speed between stations. The "great mass of mankind" which inhabits this part of the world demands such rapid transit. The competitors of the defendants freely employ it. No statute forbids it. In the absence of some peculiar circumstances or particular conditions other than a country highway crossing somewhat obscured by trees and buildings, it is not for this court or for a jury to say that such speed in the open country is illegal or negligent. At the highway crossing there was a small station where the electric car stopped on signal for the reception and discharge of passengers. There was a crossing sign. The car was coming from the north. The view to the north was considerably obstructed by buildings, trees, and a fence, but the track itself was visible straight ahead on the highway for a distance of about one hundred feet, and when the boundary of the right of way was reached, fifty-nine feet distant from the nearest rail on the westerly or south-bound track, not only the crossing but the track north and south for a long distance was visible.

The second ground of negligence rests upon the failure to signal for the crossing. There are no statutory regulations directly applicable to electric interurban cars and covering such a situation. Nevertheless ordinary care would doubtless require a signal, and it was customary in the operation of the road in question to give such signals. The motorman testified: "I blew my whistle when I was about 600 feet north of the crossing; that was my usual custom." This is met by the testimony of only one witness, a Mr. Lippert, who testified as follows: "After I saw the car through that opening I didn't hear any signals whatever." The opening referred to was through the trees or between the trees and buildings where at a point on the highway 355 feet east of the crossing some section of the railway track to the north of the crossing was visible. "Q. State whether or not you paid any attention or listened for signals. A. I don't believe—I believe my mind was pretty well occupied, but I didn't hear anything. I am

sure I didn't hear no whistle that day.     After that point I didn't hear no whistle, I didn't hear any signals at all." This evidence was insufficient to rebut the affirmative and positive testimony of the motorman, according to the rule adopted by this court and applied in *Sutton v. C., St. P., M. & O. R. Co.* 98 Wis. 157, 73 N. W. 993; *Ryan v. La Crosse City R. Co.* 108 Wis. 122, 83 N. W. 770. There was therefore no evidence to go to the jury upon the question of defendants' negligence.     Upon the question of decedent's contributory negligence we need not pass because unnecessary to the decision of the case.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied January 9, 1912.