Appeal from Second District

## BUTLER v. PAYNE, Agent.

No. 3689.    Decided December 3, 1921.    Rehearing Denied January
25, 1922.    (203 Pac. 869.)

1.  RAILROADS—EVIDENCE HELD TO SHOW AUTOMOBILE DRIVER COULD
    HAVE SEEN TRAIN.  In an action for the death of an automo-
    bile driver at a railroad 'crossing, evidence *held* to show that
    the driver had ample opportunity to have seen the approaching
    train before he entered upon the crossing.

2.  RAILROADS—TRAVELERS MUST LOOK AND LISTEN.  Travelers on
    a highway approaching a railroad track must look and listen
    for an approaching train, and, if necessary, stop in order to
    look from a place from which the train can be seen; and,
    where the evidence shows that the driver of an automobile
    had ample opportunity to see the train and did not stop, he
    is contributorily negligent as a matter of law, either in fail-
    ing to look or in failing to heed what he saw, so that there can
    be no recovery for his death.[1]

3.  APPEAL AND ERROR—ERRORS OF TRIAL COURT ARE NOT PREJU-
    DICIAL TO PLAINTIFF WHERE VERDICT SHOULD HAVE BEEN DI-
    RECTED FOR DEFENDANT.  Where the evidence showed that plain-
    tiff's decedent was contributorily negligent as a matter of
    law so that a verdict should have been directed for defendant,
    plaintiff was not prejudiced by errors in instructions to the
    jury, or by the refusal of his requested instructions.

Appeal from District Court, Second District, Weber Coun-
ty; *A. E. Pratt,* Judge.

Action by George H. Butler, as administrator of Ormond
H. Butler, deceased, against John Barton Payne, as Agent

---

[1] *Teakle* v. *S. P. L. A. & S. L. Ry.,* 32 Utah, 276, 90 Pac. 402,
10 L. R. A. (N. S.) 486; *Rogers* v. *R. G. W. Ry. Co.,* 32 Utah, 367,
90 Pac. 1075, 125 Am. St. Rep. 876; *Wilkinson* v. *O. S. L. Ry.,* 35
Utah, 110, 99 Pac. 466; *Bates* v. *S. P., L. A. & S. L. Ry.,* 38 Utah,
568, 114 Pac. 527; *Stegell* v. *Salt Lake & Utah R.'R.,* 50 Utah, 139,
167 Pac. 237; *Derrick* v. *S. L. & O. Ry.* 50 Utah, 573, 168 Pac. 335;
*Lawrence* v. *D. & R. G. Ry.,* 52 Utah, 414, 174 Pac. 817; *Shortino* v.
*Salt Lake & Utah R. R.,* 52 Utah, 476, 174 Pac. 860.

under the Transportation Act of 1920 (41 Stat. 456). Judgment for defendant, and plaintiff appeals.

AFFIRMED.

*N. J. Harris,* of Ogden, for appellant.

*George H. Smith, John V. Lyle,* and *R. B. Porter,* all of Salt Lake City, and *C. R. Hollingsworth,* of Ogden, for respondent.

THURMAN, J.

The administrator of the estate of Ormond H. Butler, deceased, brought this action to recover damages for the death of his intestate, alleged to have been caused by the negligence of the agents and servants of the defendant in operating a locomotive engine and cars on the Oregon Short Line Railroad in Ogden City, Weber county, Utah. At the time of the accident in question the railroad was being operated by defendant as Director General of Railroads under authority of the United States government. The deceased was riding in an automobile on a public highway in Ogden City, within the inhabited portions thereof, and was struck and killed by a locomotive engine attached to a train of cars running south at a point where said highway crosses defendant's railroad. It is alleged by plaintiff that the agents and servants of defendant were careless and negligent in operating the train at a great and dangerous rate of speed, viz., 60 miles an hour, without keeping a lookout and without ringing the bell or blowing the whistle, contrary to the statutes of the state and ordinances of Ogden City, which ordinances declare it to be unlawful to run a locomotive, train, or cars, operated by steam, within the corporate limits of said city, at a greater speed than 10 miles an hour. Defendant denies that his agents and servants were negligent in operating said train as alleged in the complaint, or at all, and for a further defense affirmatively alleges that plaintiff's intestate was him-

self negligent and careless in negligently and carelessly driving his automobile upon said railroad without either looking or listening for an approaching train. It is alleged by defendant that the deceased had a clear and unobstructed view of the railroad track for a long distance in a northerly direction before he reached the crossing where the collision occurred. At the close of plaintiff's evidence defendant moved for a nonsuit, and when defendant rested moved for a directed verdict. Both motions were denied. The jury impaneled to try the case found for the defendant no cause of action. From the judgment entered thereon plaintiff appeals, and relies on alleged errors of the court in its instructions to the jury and its refusal to instruct as requested by the plaintiff.

The evidence taken at the trial and included in the bill of exceptions is quite voluminous. It relates mainly to the question whether or not the physical conditions in a northerly and northwesterly direction from the scene of the accident were such that the deceased, Ormond Butler, in the exercise of ordinary care, could or ought to have seen or heard the approach of the train. He was reared in that vicinity, was familiar with the highway, which was locally known as Twelfth street, having traveled it many times. The highway crosses the railroad at right angles. Deceased was traveling east when the accident occurred and, according to the testimony of some of plaintiff's witnesses, as well as witnesses for the defendant, he "was going real fast." There is also testimony to the effect that the train that struck him was running faster than usual. There is a conflict in the evidence as to whether the bell was rung or the whistle blown or whether or not any warning whatever was given of the approach of the train. Several of the witnesses saw the collision. One of plaintiff's witnesses testified that deceased passed her residence, going towards the crossing, and that "he was going real fast." She did not see him again, but saw the automobile lifted in the air when it was struck by the train. Her residence was about 235 feet west of the crossing. No one saw the deceased stop or could tell from observation

whether he looked or listened for an approaching train. The fact as to whether the deceased did look or listen for the train before attempting to cross the track depends largely upon circumstantial evidence. The physical conditions of the country adjacent to the highway and railroad north and northwest of the crossing where the collision occurred are of vital importance in determining whether the deceased ought to have seen or heard the train before attempting to cross the track. Numerous photographs were taken on the day of the accident, especially of physical conditions north and northwest of the crossing; others were taken within a day or two afterwards. The date of the accident was March 19, 1919, and the accident occurred in broad daylight between 7 and 8 o'clock in the morning. The conditions seem to have been ideal for obtaining an unobstructed view of the railroad north of the crossing from the various points on the highway along which the deceased was traveling. While there were a few trees, here and there, and some willows, sweet clover, and one house intervening, there was no foliage at that season of the year; consequently the railroad for a distance of 1,000 feet or more from the crossing could have been seen by a traveler on the highway if he had looked at any point within 75 or 100 feet of the crossing. Such, in the opinion of the writer, is a conservative statement of the physical conditions existing at the time of the accident as disclosed by some of the photographs taken on the day when the accident occurred.

One or two of plaintiff's witnesses testified to the effect that one would have to be within a very few feet of the crossing before he could see along the track in a northerly direction or see a train approaching. Admitting this to be true, which is impossible if the photographs referred to reflect the actual conditions, it was the duty of the deceased, in the exercise of ordinary care, to look for an approaching train the first opportunity he had before attempting to cross the track. As suggested by the trial court, in passing upon the motion for a nonsuit, a person traveling in an automobile can without

danger approach much closer to a railroad track than one driving a vehicle drawn by horses.

We have examined the evidence with scrupulous care, and have reached the conclusion that if deceased had exercised ordinary care in looking for an approaching train he would have seen the train with which he collided in time to avoid the accident. This being the case, it becomes entirely immaterial whether or not he could have heard the train, or whether or not the defendant's servants or agents were negligent in its operation. The same is true as to certain requests for instructions made by the plaintiff, to the effect that deceased was presumed to have exercised due care for his own safety. It is sufficient to say that such presumptions are not permissible where they come in conflict with direct evidence, or where the circumstantial evidence to the contrary is conclusive, as in the instant case.

The proposition that it is the duty of travelers before attempting to cross a railroad track upon which trains are being operated to both look and listen for an approaching train has been affirmed by this court in numerous well-considered cases, and has long since been the established law in this jurisdiction. Many of the cases so holding have been collated by defendant in his brief, and copious quotations made therefrom. The following, among others, are cited: *Teakle* v. *S. P., L. A. & S. L. Ry.*, 32 Utah, 276, 90 Pac. 402, 10 L. R. A. (N. S.) 486; *Rogers* v. *R. G. W. Ry. Co.*, 32 Utah, 367, 90 Pac. 1075, 125 Am. St. Rep. 876; *Wilkinson* v. *O. S. L. Ry.*, 35 Utah, 110, 99 Pac. 466; *Bates* v. *S. P., L. A. & S. L. Ry.*, 38 Utah, 568, 114 Pac. 527; *Stegell* v. *Salt Lake & Utah R. R.*, 50 Utah, 139, 167 Pac. 237; *Derrick* v. *S. L. & O. Ry.*, 50 Utah, 573, 168 Pac. 335; *Lawrence* v. *D. & R. G. Ry.*, 52 Utah, 414, 174 Pac. 817; *Shortino* v. *Salt Lake & Utah R. R.*, 52 Utah, 476, 174 Pac. 860.

In *Lawrence* v. *D. & R. G. Ry. Co.*, supra, the doctrine is tersely and admirably stated by the late Mr. Justice McCarty, at page 423 of the report (174 Pac. 820), in the following language:

"A person, before attempting to cross a railroad track, and when an approaching train is in full view, is chargeable with seeing what he could have seen if he looked, and with hearing what he would have heard if he had listened. In other words, where he apparently looks and listens, but does not see or hear the approaching train, it will be presumed that he did not look or listen at all, or, if he did, then he did not heed what he saw or heard."

In *Shortino* v. *Salt Lake & Utah R. R.*, supra, which is the most recent crossing case decided by this court, the doctrine is again clearly and succinctly stated, and goes to the extent of holding that it may even become necessary for the traveler to stop as well as to look and listen. As that phase of the doctrine is especially pertinent to the instant case, we quote the following excerpt from the opinion of Mr. Justice Frick (then Chief Justice) at page 495 of the report (174 Pac. 867):

"While it is true that the traveler, in attempting to cross a railroad track at a public crossing, is required to exercise only ordinary care, yet what constitutes ordinary care under such circumstances, or, as it is sometimes termed, 'the measure of duty,' is prescribed by law, and therefore is not left to the whim or caprice of either court or jury. The measure of duty in such case is to look and listen, and, under certain circumstances, it may be even necessary to stop. If, therefore, the evidence discloses that the traveler has failed to comply with the duty the law imposes, and his failure is the proximate cause of the accident and injury, the law prevents a recovery."

The opinion in the Shortino Case is elaborate and exhaustive, and, without occupying time and space in making a comparison, it is sufficient to say that the facts and conditions in that case were strikingly similar to those existing in the case at bar.

The decisions of this court above cited, in one form or another, discuss practically every phase of the law applicable to crossing cases. Numerous authorities are referred to, and cases cited from other jurisdictions in support of the rule declared in the excerpts hereinbefore quoted.

In view of the conclusion reached it would seem unnecessary to prolong the discussion. No matter what the trial court did or said, or failed to do or say, it cannot alter

Certiorari.   Order affirmed

or change the physical conditions which irresistibly    3
compel the conclusion that plaintiff's intestate did not
exercise reasonable care for his own safety, and that his own
carelessness was the proximate cause of the accident which
resulted in his death.   The trial court ought to have granted
the motion for a directed verdict.   If the jury had found in
favor of the plaintiff, it would have been our duty, as matter
of law, to set the verdict aside and reverse the judgment.

We find no prejudicial error in the record.   The judgment
of the trial court is affirmed, with costs.

CORFMAN, C. J., and WEBER, GIDEON, and FRICK,
JJ., concur.