Appeal from Third District

JENSEN v. OREGON SHORT LINE R. CO.

No. 3673.   Decided January 18, 1922.   (204 Pac. 101.)

1. RAILROADS—EVIDENCE HELD INSUFFICIENT TO SHOW NEGLIGENCE.
In an action for the death of a boy struck by a rotary snow-
plow pushed ahead of an engine and other cars, evidence *held*
not to warrant a finding that the railroad was negligent in the
arrangement of the train, or that it failed to have a lookout
on the plow or a headlight thereon, or failed to sound the
signals for a street crossing.

2. EVIDENCE—TESTIMONY THAT WITNESS' ATTENTION WAS DIVERTED
AND HE DID NOT HEAR SIGNALS DOES NOT SUPPORT FINDING THEY
WERE NOT GIVEN.   Where numerous witnesses testified on be-
half of defendant that the whistle was blown and the bell was
rung when the train approached a street crossing, testimony
by a witness for plaintiff, who was with deceased and who
admitted his attention was centered on a train on another
track going in the other direction, that he did not hear the
whistle or the bell of the train which struck deceased, is not
sufficiently substantial to support a verdict finding that the
whistle and bell were not sounded.[1]

3. APPEAL AND ERROR—VERDICT SUPPORTED BY SUBSTANTIAL EVI-
DENCE NOT DISTURBED.   A judgment in an action at law cannot
be reversed for insufficiency of the evidence if there is any sub-
stantial evidence to sustain the verdict.

4. RAILROADS—EVIDENCE HELD NOT TO SHOW WANT OF LOOKOUT.
In an action for the death of a boy who was struck by a
rotary snowplow pushed ahead of an engine, evidence *held*
not to show failure to have a lookout in the cab of the plow or
failure of the lookout to keep watch.[2]

5. RAILROADS—BOY WATCHING TRAIN HELD NEGLIGENT.   Evidence
that deceased, a boy of 14 years old, and his companion stopped
before entering upon the first of four railroad tracks and were
watching a freight train on the fourth track when deceased was
struck by a train coming from the opposite direction, *held* to

[1] *Russell* v. *Watkins*, 49 Utah, 598, 164 Pac. 867; *Christensen* v.
*Railroad*, 35 Utah, 137, 99 Pac. 676, 20 L. R. A. (N. S.) 255, 18
Ann. Cas. 1159; *Richards* v. *Railroad*, 41 Utah, 99, 123 Pac. 933.
[2] *Martindale* v. *Oregon Short Line R. R. Co.*, 48 Utah, 464, 160
Pac. 275.

show contributory negligence as a matter of law in standing near enough to the track to be struck without first looking to see if a train was approaching.

6. RAILROADS—NEGLECT TO LOOK HELD NOT EXCUSED BY TRAIN MOVEMENTS. Where there is considerable movement by trains upon different tracks in the vicinity of a crossing, a person in attempting to cross the tracks may be excused when under other conditions he would be chargeable with contributory negligence, but this rule does not excuse failure to look for a train approaching on the first of four tracks merely because another train was crossing on the fourth track.[3]

7. RAILROADS—PEDESTRIAN MUST LOOK AND LISTEN. Before attempting to cross a railroad track, whether at a regular cross-ing or otherwise, a person must use his senses to ascertain if a train is approaching, and must both look and listen, and, if he fails to do so without reasonable excuse, he is contributorily negligent.[4]

Appeal from District Court, Third District, Salt Lake County; *J. Louis Brown,* Judge.

Action by Charles Jensen against the Oregon Short Line Railroad Company. Judgment for the plaintiff, and defendant appeals.

REVERSED, and new trial granted.

*George H. Smith, J. V. Lyle,* and *R. B. Porter,* all of Salt Lake City, for appellant.

[3] *Malizia* v. *O. S. L.,* 53 Utah, 122, 178 Pac. 756; *Kyne* v. *S. P. R. R.,* 41 Utah, 368, 126 Pac. 311; *Cromeenes* v. *S. P., L. A. & S. L.,* 37 Utah, 475, 109 Pac. 10, Ann. Cas. 1912C, 307; *Newton* v. *O. S. L.,* 43 Utah, 219, 134 Pac. 567.

[4] *Wilkinson* v. *Railroad,* 35 Utah, 110, 99 Pac. 466; *Pratt* v. *Light & Railway Co.,* 38 Utah, 500, 113 Pac. 1032; *Bates* v. *Railroad Co.,* 38 Utah, 568, 114 Pac. 527; *Rogers* v. *Railroad,* 32 Utah, 367, 90 Pac. 1075, 125 Am. St. Rep. 876; *Stegell* v. *S. L. & U. R. R.,* 50 Utah, 139, 167 Pac. 237; *Derrick* v. *S. L. & O. Ry.,* 50 Utah, 573, 168 Pac. 335; *Lawrence* v. *D. & R. G. R. R. Co.,* 52 Utah, 414, 174 Pac. 817; *Shortino* v. *Salt Lake & U. R. R.,* 52 Utah, 476, 174 Pac. 860; *Butler* v. *Payne, etc.,* 59 Utah 383, 203 Pac. 869; *Kent.* v. *O. L. & I. Ry. Co.,* 50 Utah, 328, 167 Pac. 666.

*B. N. C. Stott,* of Salt Lake City, for respondent.

THURMAN, J.

On March 14, 1917, plaintiff's son, Rulon Jensen, 14 years of age, was run over and killed by a railroad train operated by defendant company at Idaho Falls, in the state of Idaho. The accident occurred at a point where defendant's railroad crosses a street known as G street and at about the hour of 8:15 p. m. of the date above mentioned. The locomotive was attached to several cars in the rear and was pushing a rotary snowplow in front. The company's employees, during the day of the accident, had been cleaning snow from the track and were returning to the depot at Idaho Falls. The rotary was equipped with a cab or lookout in front, and there was evidence tending to show that it covered 9½ inches more space in width on each side of the track than a locomotive engine. The train that struck and killed deceased was running south on what is known as Boulevard street. There were four tracks running parallel on said street, and deceased was struck by a train running on the track farthest east.

It is alleged by plaintiff that defendant was negligent in operating its train in the following particulars: (1) In pushing the snowplow in front of the engine; (2) in operating the train at a high rate of speed, to wit, 20 miles an hour; (3) in failing to keep a lookout for persons on or near, or about to cross, its tracks at said crossing; (4) in failing to keep its locomotive and cars under control so that the same might be stopped in time to avoid injury to any person crossing or about to cross the street; (5) in failing to blow the whistle or ring the bell of the locomotive engine in approaching said crossing; (6) in failing to give any timely warning of the approach of said train; (7) in failing to have a member of the train crew upon the front of said rotary car while the same was being pushed through the town and across said crossing.

Defendant denied that it was negligent as alleged in the

complaint or at all, and affirmatively alleged that deceased was negligent in attempting to go upon the crossing without stopping, listening, or looking, and in approaching dangerously near to the crossing and standing upon the same without looking or listening for an approaching train.

The jury to whom the case was tried found for the plaintiff, and judgment was entered accordingly. Defendant thereafter moved for a new trial, which motion was denied. Defendant appeals to this court and relies on numerous exceptions taken to the rulings of the trial court during the progress of the cause.

There was no one present with deceased when the accident occurred except a boy companion by the name of Priest, of about the same age or a little older. The testimony of Priest, given in behalf of plaintiff, was to the effect that he and the deceased were attending school together in Idaho Falls, and that they frequently associated together as companions; that they were in the same grade at school, but deceased was more advanced than witness and frequently assisted him in the preparation of his lessons; that on the evening of the accident, a few minutes before 8 o'clock, deceased came to the home of witness to assist him in his arithmetic; that they were together at witness' home about 15 minutes. They then started to go to a show six or seven blocks distant, west of defendant's railroad. Both witness and deceased lived on the east side and consequently were compelled to cross the railroad to get to the show. The G street crossing was the most convenient, so they went in that direction. As they approached the crossing they saw a freight train of about 50 cars moving north on the track farthest west. They were then about 75 feet from the crossing. They were talking and walking along very slowly. There is a slight upward grade to the north. The freight train was running up the grade and making considerable noise. It was snowing just a little and was very dark. When the boys arrived at or near the east rail of the east track they stopped. Witness stood about 5 feet from the track. Deceased was in front of witness, a little to one side. Their shoulders nearly touched. Witness says he was

looking west at the moving freight train on the west track.
He judged deceased was also looking in the same direction,
but did not know whether he was or not. While in this at-
titude deceased was struck by the rotary. At the time it
looked like a cloud to witness, but immediately after he saw
it was the snowplow. It was in front of an engine and sev-
eral cars. The engine was in the middle of the train. When
deceased was struck he called witness' name. The first light
witness observed was from the cab of the locomotive. He
saw no light cast down in front of him nor heard any bell
ring. His sight and hearing were good. Both boys were
standing when deceased was struck. Witness heard no sound,
other than the freight train he was observing, until deceased
called his name. The train that struck deceased was running
10 or 12 miles an hour, and never slowed up till it reached
the depot several blocks south of the crossing. Witness ran
after the train, but was unable to catch up with it until it
stopped. A gentleman stepped off the caboose, and witness
informed him of the accident. They searched for the body
and found it about 25 or 30 feet behind the caboose, lying
between the tracks. Deceased's clothing was badly torn and
was pulled up over his head. One leg was severed from his
body. He was dead when they found him. He had been
dragged from the crossing south 1,200 or 1,400 feet.

On cross-examination the witness testified, in substance,
that he knew when he reached the track; that he had fre-
quently crossed there. He had seen deceased very often. In
the evening he would see him at his home. They were fre-
quently out together. He helped deceased to take care of
his father's stock. The boys went out nearly every night.
The distance from the center of the east track to the next
track, going west, is 14 feet, from the second to the third is
44 feet, and from the center of the third to the center of the
fourth is 16 feet. There was no light on the front of the
rotary or witness would have seen it. He stopped where he
did because he did not wish to go on the right of way. It
was safer where they stopped than it would have been on the
44-foot space. Witness and deceased had frequently crossed

at the G street crossing. They were both quite familiar with it. The only reason he and deceased stopped that night at the east track was to let the freight train on the west track go by.

The foregoing is the substance of the testimony of the Priest boy as far as relates to the accident. The witness gave much testimony concerning the location of buildings and structures in the vicinity of the crossing, and also concerning his intimate relations with the deceased. It is impracticable to refer to such evidence in detail, nor is it necessary to a determination of the issues involved. It may be stated once for all that the testimony presented by plaintiff showed the deceased to have been a bright, intelligent boy, both physically and mentally well developed. He was a seventh grade student in the district school, and outside of his school hours helped his father on and about his farm and store, and appeared to have been above the average, in many respects, among boys of his age.

Young Priest was the only witness as to how the accident occurred. No one else, as far as the record discloses, saw deceased alive at any time after he left his home on the evening in question.

We have endeavored to faithfully present the substance of the testimony of the Priest boy because of its vital importance in determining the questions to be decided by the court. He was positive in his testimony to the effect that there was no light on the rotary or he would have seen it, and that there was no warning given of the approach of the train or he would have heard it. He did not, however, claim to have either looked or listened for an approaching train, but, on the contrary, admitted he was giving his attention to the movement of the freight train on the west side of the street.

It conclusively appears from the evidence that the crossing in question is one that is frequently used by a large percentage of the people both in Idaho Falls and the country contiguous thereto. There was a light burning on the west side of the crossing, but Priest testified it would not light the crossing when a train was passing on the west track.

The evidence introduced by defendant was to the effect that none of the employees of the company operating the train saw the boys standing by the track or knew that an accident had occurred until the train stopped at the depot in Idaho Falls.

Leo M. Rush, for defendant, testified that he was operating the rotary engine when the accident occurred; that he was in the cab or lookout on the front of the rotary; that he blew the whistle of the rotary for the G street crossing 150 or 200 feet north of the crossing; that they were running between 4 and 6 miles an hour; that there was a headlight on the rotary; and that it was lighted at that time. Witness was looking down the right of way in a southerly direction when they crossed the crossing. His vision would strike the ground about 60 feet in front of the rotary. If a man was standing up he could tell it was a man within 30 feet of the rotary. The rotary was 12 feet wide.

D. O. Bellamy, for defendant, testified that he was engineer on the rotary on the night in question; that the headlight on the rotary was burning at that time; that a crossing whistle was blown north of the G street crossing. Witness could not say whether the bell on the engine was ringing.

Geo. F. Baker, for defendant, testified that he was road foreman of engines; that at the time of the accident he was in the passenger depot (this was shown to be about 1,156 feet south of G street crossing) ; that a rotary plow came in from the north; that he heard it whistle and walked out on the platform and saw it coming. The rotary headlight was burning. It was a big electric headlight. The rotary was a short distance north of G street crossing. Witness watched it from then on. It made a clattering noise. He heard it a distance of about 1,500 feet.

M. J. Feschtel, for defendant, testified that he was locomotive engineer, and on the day of the accident was running the engine that pushed the rotary into Idaho Falls. It was running 5 or 6 miles an hour. The bell on the locomotive was ringing. It had been ringing from the time the train entered the north yard about a half mile north of the cross-

ing. The light on the rotary was burning coming into Idaho Falls, and burning after the train stopped at the depot. Witness blew the crossing signal, two long and two short, about 40 rods north of the crossing. The rotary whistle was blown not to exceed 300 feet north of the crossing.

Homer A. Beham, for defendant, testified he was locomotive fireman on the train which collided with deceased, that the headlight was burning and the bell ringing when they came into Idaho Falls, and that the whistle was blown, two long and two short, on approaching G street crossing.

Winn McCurdy, for defendant, testified he was section foreman at Idaho Falls and was living in the section house at G street crossing, about 70 feet from the east track; that he heard the whistle of the rotary plow coming from the north and looked out and saw the rotary coming across the crossing, but saw no one standing on the crossing.

The foregoing constitutes the substance of all the evidence bearing directly upon the operation of the train and the happening of the accident. Certain photographs were admitted by way of illustration, both for plaintiff and defendant. They were identified by the witness Priest as being accurate representations of the crossing and vicinity, looking both north and south along the tracks of the railroad. The photographs indicate nothing that would obstruct the vision of one standing within 5 or 10 feet from the east track and looking north along the railroad.

At the close of plaintiff's evidence defendant moved the court for a nonsuit, and when defendant rested moved for a directed verdict. Both motions were denied.

The overruling of these motions and the motion for a new trial constitute the principal grounds upon which appellant relies for a reversal of the judgment.

The motion for a directed verdict covers practically all the grounds upon which appellant relies. It is contended by appellant that there was no evidence whatever of negligence on the part of defendant in operating its train, while the evidence was conclusive that the deceased was guilty of contributory negligence, and that such negligence was the prox-

imate cause of the accident which resulted in his death.

It must be admitted upon the very threshold of the discussion that the evidence as to the charges of negligence on the part of defendant is exceedingly meager and unsatisfactory. There was no evidence whatever to sustain the charges that pushing the snowplow in front of the engine was negligence, or that the snowplow could be operated in any other way. The same is true as to the alleged negligence in operating the train at an excessive rate of speed. Admitting that the speed was 10 or 12 miles an hour, as stated by the witness Priest, still there was not a syllable of evidence offered to show that such rate of speed was in any sense negligence. Indeed, it may be stated in this connection, as suggested by appellant's counsel, that inasmuch as the deceased was not attempting to cross the track at the time he was struck by the train, it is difficult to see how the speed of the train could possibly be the proximate cause of the accident. Any other or different rate of speed would probably have produced the same result to one standing within striking distance of the train. As to the charge of defendant's failure to keep a lookout, no direct evidence was offered to support the charge. At most, it was a mere inference from the fact that the train struck the deceased. Surely such inference, under the facts and circumstances of the instant case, should not be treated as substantial evidence as against the positive, direct testimony of the witness Rush that he was in charge of the rotary plow; that he was in the lookout cab of the rotary and was looking south along the track as the train approached the crossing. Nor was there any evidence whatever that the train should have been brought to a stop to avoid an injury, for, even if the lookout had seen the deceased standing as the evidence shows he was standing, the lookout certainly had the right to presume that the deceased would step out of the way of the train. There was neither law nor ordinance, under the facts of this case, requiring defendant to stop the train. Nor can it be consistently contended that defendant was required to have a member of the train crew on the front of a rotary in addition to the lookout stationed in

the cab. Indeed, it was not shown that such a requirement was either practicable or possible of accomplishment in view of the nature and design of the instrumentality in question.

This brings us to the question as to whether or not the bell was rung or the whistle blown or other warning given of the approach of the train. The witness Priest says he did not hear the bell ring, or hear anything until deceased called his name and was struck by the train. He states, however, that he was looking west, across the street, at a freight train moving north on the track farthest west, and that he was giving his attention to the movements of that train.

This is not a case in which the witness claims to have been listening for signals and failed to hear them. The witness in this case was not consciously listening at all. His attention was directed in another direction, and his mind was engrossed with other matters. Besides this, the freight train to which his attention was directed was pulling upgrade and making considerable noise. In view of all of these circumstances and conditions, it cannot be contended that the testimony of the witness Priest to the effect that he did not hear the bell rung or the whistle blow can be considered as evidence at all that the bell did not ring or the whistle did not blow. In *Russell* v. *Watkins*, 49 Utah, 598, 164 Pac. 867, the court, through Mr. Justice Corfman, speaking of the effect that should be given to negative testimony as against affirmative testimony under certain conditions, at page 604 of the report (164 Pac. 869) says:

"The weight of negative testimony of witnesses as to the giving of signals ordinarily is for the jury to determine; but, when physical conditions and the attending circumstances are such as to render it highly improbable that they could hear, we think the rule should be and is otherwise"—citing *Jordan* v. *Osborne*, 147 Wis. 623, 133 N. W. 32; *Menard* v. *Boston, etc., R. R.*, 150 Mass. 386, 23 N. E. 214.

Six witnesses in the present case testified affirmatively as to the warnings given. Leo M. Rush, in charge of the rotary, says that he blew the whistle for the crossing. D. O. Bellamy, engineer on the rotary, says the crossing whistle was blown for the crossing. Geo. F. Baker, road foreman, says he was

at the passenger depot (1,156 feet south of the crossing) and heard the whistle blow and walked out on the platform and saw the rotary coming. The headlight was burning. The rotary was a short distance north of the crossing and it made a clattering noise. Witness heard it a distance of about 1,500 feet. M. J. Feschtel, locomotive engineer of the rotary train, said the locomotive bell was ringing from the time the train entered the north yard, one-half mile north of the crossing. The headlight was burning and the whistle was blown, two long and two short, about 40 rods north of the crossing. Homer A. Beham, locomotive fireman on the rotary train, says that the crossing whistle was blown and the bell was ringing when the train came into Idaho Falls. Winn McCurdy was section foreman living right at the crossing. He heard the rotary whistle coming from the north, looked out, and saw the rotary coming across the crossing.

In the face of such evidence as this, together with the conditions and circumstances heretofore enumerated, the writer is of the opinion that the statement of the witness Priest that he did not hear the whistle blow or the bell ring created no conflict in the evidence, and that therefore the testimony of defendant's witnesses as to the warning given stands uncontradicted and unimpeached. In support of this conclusion our attention is called to the following cases: *Christensen* v. *Railroad,* 35 Utah, 137, 99 Pac. 676, 20 L. R. A. (N. S.) 255, 18 Ann. Cas. 1159; *Goss* v. *N. P. R. R. Co.,* 48 Or. 439, 87 Pac. 149; *Richards* v. *Railroad,* 41 Utah, 99, 123 Pac. 933; *Jordan* v. *Osborne,* 147 Wis. 623, 133 N. W. 32; *Knox* v. *P. & R. Ry. Co.,* 202 Pa. 504, 52 Atl. 90; *Van Patten* v. *Schenectady St. Ry. Co.,* 80 Hun. 494, 30 N. Y. Supp. 501; *Draper* v. *Baker,* 61 Wis. 450, 21 N. W. 527, 50 Am. Rep. 143; *Ralph* v. *Railroad,* 32 Wis. 177, 14 Am. Rep. 725; *Corcoran* v. *Pennsylvania R. Co.,* 203 Pa. 380, 53 Atl. 240; *Johnson* v. *New York Cent. & H. R. R. Co.,* 173 N. Y. 79, 65 N. E. 946; *Urias* v. *Pennsylvania R. Co.,* 152 Pa. 326, 25 Atl. 566.

In taking this position we are not unmindful of the limitations imposed by the state Constitution and the rule by which

this court has been governed ever since long before the state Constitution was adopted. We cannot reverse a judgment in an action at law on the grounds that the evidence is insufficient if there is any substantial evidence to sustain the judgment. In the case at bar to hold that there was substantial evidence that no warning was given of the approach of the train that struck the deceased would be to give substantial effect to testimony which hardly amounts to a scintilla, while totally disregarding the very substance of the evidence. This a jury may not do notwithstanding its exclusive right to determine controverted questions of fact. If either courts or jurors were permitted such latitude, the machinery of the law might be capriciously converted into an instrument of oppression instead of a means by which the rights of litigants may be determined.

Respondent's counsel in reply to appellant's contention cite the case of *Martindale* v. *O. S. L. R. R. Co.*, 48 Utah, 464, 160 Pac, 275, and claim that the case, in many respects, is similar to the case at bar. It is not necessary to review the case. The following brief excerpt from the opinion of the court shows that the case bears little or no analogy to the case before the court. Mr. Justice Frick, who wrote the opinion, after referring to certain impressions made upon his mind during the argument, at page 476 of 48 Utah, at page 279 of 160 Pac., says:

"After reading the evidence of both the fireman and engineer, however, there no longer remains any doubt in the mind of the writer regarding that question. They both testified that they not only did not look, but said that if they had looked they could and probably would have seen the team and wagon approaching the crossing."

In the instant case the lookout in the rotary cab testified that he did look down along the right of way in a southerly direction.

The distinction between the two cases, as far as the lookout is concerned, is as wide as can be made by any conceivable state of facts.

Even if it be conceded that the court is in error in its legal conclusions concerning the matters already discussed on the

assumption that there is some substantial evidence of negligence on the part of defendant, still, as we view the case, the ultimate conclusion of the court must be the same. It is difficult to see upon any theory deducible from the undisputed facts how the judgment for respondent can be upheld.

In speaking of the attitude of the Priest boy just before the accident respondent's counsel, in their brief, say:

"It is true he did not hear a bell or whistle; but at that time his attention was diverted to the train moving in an opposite direction—a noisy freight train that was pulling up grade—and he was standing watching for it to go by, and, while his attention was so diverted, he heard no noise whatever to indicate that a rotary was approaching."

Again in another part of their brief they make the following statement concerning the deceased:

"They say that the boy was negligent in going so near the railroad tracks without looking and listening. He certainly stopped. Why did he stop if he did not look or listen? He saw a freight train which diverted his attention, and he stopped and stood and watched it go by and thought he was at a safe distance from the locomotive."

These observations of respondent's counsel undoubtedly reflect the state of mind the boys were in just before the accident occurred. No one can believe they saw the rotary coming or heard the various warnings of its approach. Counsel for respondent have undoubtedly stated the reason why the boys did not see or hear the rotary train and why the deceased made the fatal mistake of standing too near the track. Counsel insert these statements in their brief by way of argument and take the position that such conduct on the part of deceased completely absolved him from the charge of contributory negligence. We do not so understand the law. To so interpret the law would be to hold the railroad company responsible for the mistake which counsel admit the deceased made by standing too near the track. There is no foundation in reason for such contention, nor can it find support in any reported case.

The contention appears to be based upon the proposition that, where there is considerable movement among trains

upon different tracks leading in the same or different directions at or in the vicinity of a crossing, a person in attempting to cross a track may be excused when under other conditions he might be chargeable with contributory negligence. No doubt, cases can be found almost innumerable upholding this view. Counsel for respondent cite many cases in their brief, including cases decided by this court: *Malizia* v. *O. S. L.*, 53 Utah, 122, 178 Pac. 756; *Kyne* v. *S. P. R. R.*, 41 Utah, 368, 126 Pac. 311; *Cromeenes* v. *S. P., L. A. & S. L.*, 37 Utah, 475, 109 Pac. 10, Ann. Cas. 1912C, 307; *Newton* v. *O. S. L. R. R.*, 43 Utah, 219, 134 Pac. 567.

It would be a useless consumption of time and space and unnecessary prolong this opinion to attempt a detailed review of the cases referred to. In the opinion of the writer they have no logical bearing upon the question before the court. They were governed by facts and conditions entirely dissimilar to the facts and conditions existing in the instant case. As stated by Mr. Justice Frick in the case last cited, *Newton* v. *O. S. L. R. R.*, supra, at page 229 of the report (134 Pac. 571):

"It is true that a party desiring to go on or pass over a railroad track must not only look and listen for approaching trains, but ordinarily he should so look and listen as to make his vigilance effective. But whether the traveler must make his vigilance effective as against a multiplicity of dangers, when such threaten him at the same time and place, is, in cases like the one at bar, the very question that must be determined."

The controlling fact in practically all of the cases relied on by respondent on this particular question is that the person attempting to cross or use the street was at the time of the accident apparently or actually confronted with a "multiplicity of dangers" which tended to confuse, mislead, or disconcert the mind to such an extent as to leave the matter of contributory negligence in doubt. In such case it is clearly a question for the jury. No such condition existed in the case at bar. The freight train which monopolized the attention of the deceased and his companion to such an extent as to make them disregardful of their own safety was distant from them more than 75 feet. It in no manner threatened their safety.

It had no tendency to confuse, mislead, or disconcert. It was simply a subject of idle curiosity as far as the boys were concerned, and could afford no possible justification for their inexcusable negligence. The deceased was not attempting to cross the track at the time. He placed himself in the path of an onmoving train and stopped without first looking and listening for its approach. He was just as much a trespasser in the eyes of the law as he would have been if he had stood in the middle of the track. He was a bright intelligent boy, perfectly familiar with the crossing and knew the effect of coming in contact with a moving train. It was light enough to see the freight train for at least 150 feet and estimate the number of cars. The same attention given to the track looking north would no doubt have disclosed the approach of the rotary train in time for deceased to have avoided the accident.

It is the settled law of this jurisdiction that before attempting to cross a railroad track, whether at a regular crossing or otherwise, the person so attempting to cross must use his senses and faculties to ascertain if a train is approaching so as to avoid a collision. It is his duty to both look and listen for an approaching train before attempting to cross the track. If he fails to do so without reasonable excuse, he is guilty of contributory negligence and cannot recover if such negligence was the proximate cause of the injury. *Wilkinson* v. *Railroad*, 35 Utah, 110, 99 Pac. 466; *Pratt* v. *Light & Railway Co.*, 38 Utah, 500, 113 Pac. 1032; *Bates* v. *Railroad Co.*, 38 Utah, 568, 114 Pac. 527; *Rogers* v. *Railroad*, 32 Utah, 367, 90 Pac. 1075, 125 Am. St. Rep. 876; *Stegell* v. *S. L. & U. R. R.*, 50 Utah, 139, 167 Pac. 237; *Derrick* v. *S. L. & O. Ry.*, 50 Utah, 573, 168 Pac. 335; *Lawrence* v. *D. & R. G. R. R. Co.*, 52 Utah, 414, 174 Pac. 817; *Shortino* v. *Salt Lake & U. R. R.*, 52 Utah, 476, 174 Pac. 860; *Butler* v. *Payne, etc.*, 59 Utah, 383, 203 Pac. 869. To these may be added the recent case of *Kent* v. *O. L. & I. Ry. Co.*, 50 Utah, 328, 167 Pac. 666, in which plaintiff's intestate, while standing too near the track, was struck and killed by the train upon which she expected to become a passenger. In that case

the court, at page 339 of the report (167 Pac. 669), says:

"Where one voluntarily assumes a position on or so near a railway track that a train of cars in passing on the track must necessarily strike him, can reasonable minds differ as to whether his act in so placing himself was the proximate cause of injury in case the cars strike him? We think not. What is there to differ about? It is physically impossible for one to escape injury if he remains either on or so near a railway track as to be in the path of a passing train of cars. Even children are aware of the danger under those circumstances."

We are unanimous in our conclusion that the negligence of the deceased was the proximate cause of the accident which resulted in his death. The trial court should have directed the jury to find for the defendant, no cause of action.

The court, having erred in refusing to direct a verdict for defendant, also erred, for the same reason, in denying defendant's motion for a new trial. Other reasons were assigned as grounds for a new trial, such as erroneous instructions to the jury and admission of evidence over defendant's objection. The court is of opinion that it is not necessary to consider these exceptions in detail for the reason that in view of what has been said already it is not likely that such questions will arise in a subsequent trial of the case.

The judgment of the trial court is reversed, and defendant granted a new trial, with costs.

CORFMAN, C. J., and WEBER and FRICK, JJ., concur.

GIDEON, J. I concur in the order reversing the judgment and directing a new trial. The plaintiff's testimony, in my judgment, conclusively establishes that the deceased was chargeable with such contributory negligence as precludes the plaintiff's right to recover.

I express no opinion on the remaining question discussed by Mr. Justice THURMAN. I can see no difference in principle between this case and the case of *Butler* v. *Payne*, 59 Utah 383, 203 Pac. 869, decided at the present term.