HUMPHREYS v. DAVIS, Agent.

No. 3878.   Decided July 21, 1923.   (217 Pac. 693.)

MASTER AND SERVANT—FAILURE TO SOUND WARNING OF ENGINE'S APPROACHING ON SKELETON TRACK AT ASH PIT HELD NOT PROXIMATE CAUSE OF INJURY TO ASH PIT MAN. Where the skeleton track beside an ash pit was not designed to stand or walk on, and no person could reasonably be expected to be on it, and deceased, an ash pit man, had been warned to keep off, and the only conclusion from the evidence was that he got up on the track from the pit immediately in front of the approaching engine and after the tank obstructed the hostler's view, it could not be said that the failure to ring the bell or blow the

whistle constituted negligence or was the proximate cause of the accident.

Appeal from District Court, Third District, Salt Lake County; *M. L. Ritchie,* Judge.

Action by Thomas H. Humphreys, administrator of the estate of John W. Scheidegger, deceased, against James E. Davis, as Agent of the President of the United States. Judgment for defendant, and plaintiff appeals.

AFFIRMED.

*J. D. Skeen* and *Clio C. Tanner,* both of Salt Lake City, for appellant.

*George H. Smith, J. V. Lyle,* and *R. B. Porter,* all of Salt Lake City, for respondent.

CHERRY, J.

Plaintiff's intestate, John W. Scheidegger, while employed in interstate commerce by the Director General of Railroads, was run over and killed by a locomotive on February 12, 1920, at the cinder pit in the yard of the Oregon Short Line Railroad at Kemmerer, Wyo. This action was brought by his representative to recover damages for his death, under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657-8665).

The deceased was 23 years old, and had been employed as an ash pit man for three months next previous to his death. The cinder pit, where the accident occurred is described as a standard double cinder pit, 50 feet long, consisting of a depressed track running from the level of the ground into an excavation. Over this track cars are run into the pit to be loaded with cinders. On each side of and elevated above the depressed track is a cement platform 6 feet in width on which the ash pit man works. The platforms are about on

a level with the floor of a cinder car when standing in the pit. At both ends of the platform there are concrete steps, which are the only means designed for entering or leaving the pit. On the outside of the platforms, on a level with the surface of the yard, and about 3½ feet higher than the platforms, are skeleton tracks, on which engines are placed when ashes are to be dumped into the pit. The skeleton tracks are supported by concrete pillars, sufficiently far apart to permit the ashes to be shoveled from under the skeleton tracks. the rails of the skeleton tracks are kept in place by steel I-beams, about three inches wide at the top, and about one foot below the rails. The skeleton tracks are not designed to walk or stand upon. The duty of the ash pit man is to stand on the platform and shovel the ashes from under the skeleton track into the ash car. The pit is so constructed and such tools and appliances are supplied that there is no necessity for the ash pit man to go over or between the rails of either skeleton track.

At the time of his employment deceased was instructed as to his duties and place of work, and particularly warned of the danger of, and cautioned to avoid getting on, the skeleton tracks. A few days later he was seen working on the tracks when he was again told of the danger and admonished to keep off. He replied, "I know it; I won't do it any more."

The circumstances of the accident, as disclosed by the plaintiff's evidence, were, in substance, that the deceased went to his work at 7 a. m. on February 12, 1920, and was killed an hour later. A few minutes before the accident the hostler walked past the ash pit and saw the deceased working on the platform in the cinder pit. The hostler went to engine 535, a short distance away, and backed it slowly on the west skeleton track to the pit for the purpose of dumping ashes into the pit. He testified that he kept a constant lookout but did not see deceased. A stationary fireman, looking from a distance of 50 or 60 yards, saw deceased a few minutes before the accident working on the platform in the pit. He looked again but could not see deceased and turned away for a few seconds, when looking again he saw deceased on

the I-beam between the rails of the west skeleton track in the act of raising up, facing the engine, with the engine directly upon him. He made an effort to jump. His foot apparently slipped causing him to fall over backwards on the west rail where one wheel of the tank passed over his body.

Two brakemen on a passing freight train testified that a few seconds before the fatal accident they saw deceased on the platform in the pit shoveling ashes. No one saw deceased on the track until the tank of the engine was immediately upon him.

The hostler testified positively that before backing up on to the ash pit he looked and saw the track was clear, got up on the engine, rang the bell, and went back slowly. After getting started he blew the whistle three times while backing up. He drifted slowly and just about stopped when he heard somebody "holler." He stopped instantly and got off the engine and found deceased under the back part of the tank.

An engineer testified that just before going into the boiler room, from which he immediately thereafter witnessed the accident, he heard a whistle which sounded like the whistle on engine 535, although he was not positive of the engine from which the whistle came.

Plaintiff produced other witnesses on the question of whether signals were given of the approach of the engine at the time of the accident, one of whom stated that he was on another engine 150 yards away and that no bell was rung or whistle blown on the engine moving to the cinder pit that he could see or hear. He stated that the signals might have been given but that he was looking towards the engine and he did not hear or see them. He admitted on cross-examination that he stated shortly after the accident, "I couldn't tell whether or not he rang the bell, because there were four or five bells ringing at that time." The other witnesses on this subject testified that they had no recollection of hearing any signals given, but could not say none were given as they were not paying attention to the matter. At the time of the accident, numerous other engines with bells ringing were moving about the yards in the vicinity of the cinder pit.

At the conclusion of the evidence defendant moved the court to direct a verdict for defendant upon the grounds that no negligence had been shown, and that under the evidence the deceased had, as a matter of law, assumed the risk of his injury and death. The motion was granted, and from the judgment entered on the verdict plaintiff appeals.

Two main questions are presented and argued, viz: (1) Was there sufficient evidence of defendant's negligence to be submitted to the jury? and (2) Did the evidence establish, as a matter of law, that deceased assumed the risk of the accident which resulted in his death?

The first question must be answered in the negative, which disposes of the appeal and of the necessity of considering the second question.

The only ground of negligence relied upon is the alleged failure of the hostler to give warning of the approach of the engine. The evidence on this subject was the affirmative and positive evidence of the hostler, partially corroborated by another witness, that the bell was rung and the whistle blown when the engine started. Other witnesses testified that they heard no signals given, but could not say none were given.

Under the rule announced in *Jensen* v. *O. S. L. R. R. Co.*, 59 Utah, 367, 204 Pac. 101, and cases cited, it is extremely doubtful if the evidence that no signals were given was sufficient to be submitted to the jury, but the point is not controlling and need not be decided.

The track in question was not designed to stand or walk upon. No person could reasonably be expected to be upon it. Deceased had been twice warned to keep off of it. Immediately prior to moving the engine on the pit the hostler saw deceased at work on the platform below the track in a safe place. The deceased knew from the very nature of the situation that engines would frequently move to and from the pit on the skeleton track. Before starting the hostler looked and saw the track was clear. While backing he kept a constant lookout. His view was unobstructed, except for the short distance directly in front of the tank of the engine. He saw no one. The only possible conclusion is that deceased

got up on the skeleton track from the pit, immediately in front of the approaching engine, and after the tank had obstructed the hostler's view. The engine was moving very slowly. The deceased was facing the engine and attempted to jump, showing that he saw it. In the vicinity were numerous other engines moving and bells ringing. Under these circumstances it cannot be said, if the facts were proved, that the failure to ring the bell or blow the whistle constituted negligence or was the proximate cause of the accident. *Aerkfetz* v. *Humphreys*, 145 U. S. 418, 12 Sup. Ct. 835, 36 L. Ed. 758; *N. & W. Ry. Co.* v. *Gesswine*, 144 Fed. 56, 75 C. C. A. 214; *Connelley* v. *Penn. R. Co.*, 201 Fed. 54, 119 C. C. A. 392, 47 L. R. A. (N. S.) 867; *Willever* v. *D., L. & W. R. Co.*, 87 N. J. Law, 348, 94 Atl. 595; *Ginnochio* v. *I. C. R. Co.*, 155 Mo. App. 163, 134 S. W. 129; *Gabal* v. *St. L. & S. F. R. Co.*, 251 Mo. 257, 158 S. W. 12; *Precodnick* v. *Lehigh Valley R. Co.*, 74 N. J. Law, 566, 65 Atl. 1047; *Jones* v. *Virginia R. Co.*, 74 W. Va. 666, 83 S. E. 54, L. R. A. 1915C, 428; *C., R. I. & P. R. Co.* v. *McIntire*, 29 Okl. 797, 119 Pac. 1008; *Hines* v. *Pershin* (Okl. Sup.) 215 Pac. 599.

Judgment affirmed.

WEBER, C. J., and GIDEON and THURMAN, JJ., concur.

FRICK, J., did not participate herein.